**FEDERAL DEPOSIT INS. CORPORATION v. GUNDERSON, and three other cases.**
Nos. 11493–11496.

Circuit Court of Appeals, Eighth Circuit.

Oct. 16, 1939.

James M. Kane, of Washington, D. C. (Francis C. Brown, of Washington, D. C., Frank Wickhem, of Los Angeles, Cal., and Raymond A. Hust, of Washington, D. C., on the brief), for appellant.

Tom Kirby, of Sioux Falls, S. D. (Boyce, Warren & Fairbank, of Sioux Falls, S. D., and Lee Cope, of Yankton, S. D., on the brief), for appellees.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

These are appeals from four separate judgments dismissing four actions brought by appellant against the respective appellees to enforce an alleged stockholders' liability in a closed and insolvent national bank. The appeals have been consolidated. We shall refer to the parties as they appeared below.

The actions, on stipulation of the parties, were tried to the court without a jury, and the facts were stipulated. The court adopted the facts as stipulated as its findings, and filed conclusions of law which denied plaintiff recovery.

The First National Bank of Centerville, Centerville, South Dakota was organized as a national banking association June 8, 1900. It operated and carried on a general banking business from the date of its organization until December 19, 1936. Prior to March 26, 1935, the outstanding common stock of the bank consisted of 1000 shares of the par value of $100 per share. On March 26, 1935, the bank, in legal manner, changed its capital structure by issuing preferred stock in the amount of $75,000, all of which was issued to and purchased by the Reconstruction Finance Corporation, and by reducing its common capital stock from $100,000 to $50,000. The increase in preferred stock, as well as the decrease in common stock, was duly approved by the Comptroller of the Currency on May 31, 1935. In effecting this change, the outstanding certificates evidencing 1000 shares of the common capital stock, were turned into the bank and cancelled, and new certificates evidencing 500 shares of common capital stock were issued to and accepted by the defendants in these cases, each of whom paid to the bank a sum in cash equal to the full par value of the shares evidenced by the certificates so issued and delivered. Two of the defendants had been stockholders in the bank before the capital reorganization, while the other two defendants had not been stockholders, nor otherwise connected with it before that time. The new certificates bore a printed legend reading: "This certificate of Common Capital Stock is issued subject to the provisions of Section 5151, United States Revised Statutes, as amended, and Section 23 of the Federal Reserve Act, as amended [12 U.S.C.A. §§ 63, 64]."

On December 19, 1936, the bank having closed its doors by order of the Comptroller of the Currency, the plaintiff was appointed and duly qualified as receiver of the bank. On February 2, 1937, the Comptroller of the Currency ordered and made an assessment and requisition on the shareholders of the bank to the amount of 100% of the par value of the shares of capital stock owned by shareholders at the time of the suspension of the bank, and ordered that the same be paid on or before March 9, 1937. Payment was duly demanded of the defendants, which demand was refused, whereupon these actions were commenced to recover the amounts of the assessments against them.

The defendants Nellie M. Gunderson and C. H. Gunderson had been stockholders of the bank prior to the time the shares which formed the basis of the present actions were issued, whereas the defendants W. J. Henrich and A. J. Henrich held no stock in the bank prior to the time the shares which formed the basis of these actions were issued, and they were not connected with the bank in any capacity whatever. The shares owned by each of the defendants were sold by the bank on May 31, 1935 for full par value to the defendants, who paid the same in cash.

The defendants contended in the court below, and adhere to the contention here, that the shares of stock owned by them were issued after June 16, 1933, and hence, were not subject to assessment liability because of the provisions of Section 22 of the Banking Act of 1933, 48 Stat. 189, 12 U.S.C.A. § 64a. Plaintiff contends on these appeals, as it did in the lower court, that the statute did not apply. The issue presented is purely one of law, and its solution is dependent upon the construction of the statute. This statute provides: "The additional liability imposed upon shareholders in national banking associations by the provisions of section 5151 of the Revised Statutes, as amended, and section 23 of the Federal Reserve Act, as amended (U.S.C., title 12, Secs. 63 and 64), shall not apply with respect to shares in any such association issued after the date of enactment of this Act."

The act was approved June 16, 1933. It is the contention of plaintiff that the words "shares * * * issued," as used in the statute, mean shares of common stock issued by banks organized after June 16, 1933. It is conceded by each of the parties that there is a distinction between the certificate issued to a shareholder and the "share" issued to him. The distinction is recognized by the authorities. A share of stock is the actual property of the shareholder, while the stock certificate is merely the authentic evidence of the stockholder's ownership of shares. Commissioner v. Scatena, 9 Cir., 85 F.2d 729; Wood v. Commissioner, 1 Cir., 75 F.2d 364; Richardson v. Shaw, 209 U.S. 365, 28 S.Ct. 512, 52 L.Ed. 835, 14 Ann.Cas. 981; Farrington v. State of Tennessee, 95 U.S. 679, 24 L.Ed. 558; Holland v. Duluth Iron Min. & Development Co., 65 Minn. 324, 68 N. W. 50, 60 Am.St.Rep. 480. Plaintiff con-

tends that no new shares were issued to defendants, but merely new certificates. But corporate stock, when paid for, is "issued" regardless of the execution and delivery of the certificate, which is merely evidence of the stockholder's interest. Pacific National Bank v. Eaton, 141 U. S. 227, 11 S.Ct. 984, 35 L.Ed. 702. Two of the defendants had been stockholders in the bank, but their shares, evidenced by outstanding certificates, were, according to stipulation, cancelled and the common capital stock was reduced from $100,000 to $50,000. When, therefore, the new stock issued to new stockholders for cash paid, we think this stock represented "shares issued." The stock held by the defendants when the bank closed November 19, 1936, must have been issued at some time. If it was not issued on May 31, 1935, we may well inquire when it was issued. All the old shares representing $100,000 of the capital stock of the bank were surrendered and cancelled March 26, 1935. Following this transaction the bank reorganized. After the surrender and cancellation of their stock with the approval of the Comptroller, none of these defendants owned any share of stock in the bank. So far as appears from the stipulated facts, they were under no obligation to become new stockholders, but on May 31, 1935, the bank sold to each of defendants for cash, at its full par value, the shares which are the subject of this litigation. Two of the defendants had not been stockholders prior to that date. The original capital of the bank had been entirely depleted and wiped out and a new capital stock was paid in, whereupon the shares held by the defendants duly issued. As this occurred subsequent to June 16, 1933, we are of the view that the defendants were not liable for the stock assessments sought to be enforced in these actions. All of their stock was paid for in full after that date and was issued after that date.

Administrative construction by the Comptroller of the Currency is invoked by plaintiff. This argument is based upon the fact that a deputy comptroller, on April 21, 1936, ruled that the stock of a reorganized bank was not stock "issued" after June 16, 1933, within the meaning of this act. But the statute is clear and unambiguous. In such circumstances there is no occasion to resort to rules which might aid in ascertaining its meaning. Walker v. United States, 8 Cir., 83 F.2d 103; Helvering v. Northwestern Nat. Bank & Trust Co., 8 Cir., 89 F.2d 553; United States v. Missouri P. R. Co., 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322; Louisville & N. R. Co. v. United States, 282 U.S. 740, 51 S.Ct. 297, 75 L.Ed. 672. Neither are we warranted in referring to the legislative history or construction. Walker v. United States, supra. The statute being clear, legislative exposition of its meaning is without force. Committee reports, congressional debates, and other records may not be considered where the words of the statute are unambiguous and their meaning clear. United Electric Coal Companies v. Rice, 7 Cir., 80 F.2d 1; United States v. Shreveport Grain & Elev. Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175.

The judgments appealed from are therefore affirmed.