RITCHIE v MICHIGAN CONSOLIDATED GAS COMPANY

Docket No. 92057. Submitted April 15, 1987, at Lansing. Decided September 22, 1987.

Mary Ritchie, an employee of Michigan Consolidated Gas Company for more than eighteen years, was fired in 1983. The reasons for her discharge were alleged dishonesty and falsification of company records. Ritchie filed suit against Michigan Consolidated in Washtenaw Circuit Court alleging, inter alia, wrongful discharge. Defendant moved for summary disposition and a directed verdict on the wrongful discharge claim on the basis that plaintiff was an at-will employee. The motions were denied, Edward D. Deake, J. Following a jury trial, the court entered a judgment in favor of plaintiff in the amount of $560,000 plus interest. The jury determined that plaintiff had an implied contract which prohibited her discharge except for just cause. Defendant moved for judgment notwithstanding the verdict, a new trial, and relief from judgment. All motions were denied. Defendant appealed.

The Court of Appeals held:

1. The trial court did not err in denying defendant's motions in which defendant claimed that plaintiff was an at-will employee. There were sufficient representations made for a jury to find that an implied contract existed that plaintiff would not be discharged except for just cause.

2. The trial court did not err in denying defendant's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The jury verdict that defendant did not have just cause to dismiss plaintiff was not contrary to law or against the great weight of the evidence.

3. The fact that plaintiff admitted that she changed computer codes on accounts does not support defendant's argument that the trial court should have granted defendant's motion for judgment notwithstanding the verdict on the just-cause issue. It

REFERENCES

Am Jur 2d, Master and Servant §§ 14 et seq., 43 et seq., 60 et seq.

Am Jur 2d, Trial §§ 588 et seq.

What law governs employee's right to damages for wrongful discharge. 61 ALR2d 917.

is far from clear that the activity engaged in by plaintiff constituted falsifying company records.

4. No error occurred in the trial court's refusal to give a jury instruction requested by defendant. The requested instruction was adequately covered by the general charge.

5. The trial court did not err in awarding future damages to plaintiff.

6. The trial court made no finding and rendered no decision regarding defendant's motion for remittitur. Remand is necessary for findings of fact on the issue of remittitur.

7. The trial court did not err in refusing to disburse plaintiff's award in annual payments equivalent to her salary, offset by any earnings, and contingent upon proof of reasonable mitigation efforts.

Affirmed in part, reversed in part and remanded.

1. MASTER AND SERVANT — TERMS OF EMPLOYMENT — WRONGFUL DISCHARGE — QUESTIONS OF FACT.

The signing of a statement by an employee's general manager that the employee would be employed by her employer for the duration of her home mortgage, twenty years, and the fact that the employee's supervisor over a period of four years informed the employee that she would have a job as long as that company office existed were sufficient representations to create a question for the jury as to whether a contract for just-cause termination existed and to justify a trial court's denial of the employer's motions for summary disposition, directed verdict and judgment notwithstanding the verdict, or in the alternative, new trial on the basis that the employee was an employee at will.

2. MASTER AND SERVANT — TERMS OF EMPLOYMENT — WRONGFUL DISCHARGE — QUESTIONS OF FACT.

An employer that enters into a contract with an employee which requires cause to discharge may be permitted to establish its own standards for job performance and to dismiss employees for nonadherence to those standards; in a case where the proscribed conduct is not clearly delineated, however, it is the jury's role to decide in fact whether or not the employee's actions violated the terms of the contract.

3. APPEAL — JURY INSTRUCTIONS — REQUESTS FOR INSTRUCTIONS.

Refusal of a trial court to give requested jury instructions which correctly state the applicable law is not error where the requests are covered by the general charge in a fair and adequate manner.

4. Master and Servant — Wrongful Discharge — Future Damages.

   A trial court may award future lost wages to a plaintiff who successfully prevails in a suit against his employer alleging wrongful discharge from employment; in deciding whether to award such damages the court should look to (1) whether reinstatement would be a feasible remedy, (2) the employee's prospects for other employment, and (3) the number of years remaining before the employee would be faced with mandatory retirement.

*Kurt Berggren,* for plaintiff.

*Miller, Canfield, Paddock & Stone* (by *Allyn D. Kantor* and *Kay Holsinger*), for defendant.

Before: CYNAR, P.J., and SHEPHERD and B. A. JASPER,* JJ.

PER CURIAM. Defendant Michigan Consolidated Gas Company appeals as of right from a judgment for plaintiff Mary Ritchie in the amount of $560,-000 plus interest entered on March 12, 1985, after a jury trial in Washtenaw Circuit Court. The jury, by its verdict, determined that plaintiff had an implied contract which prohibited her discharge except for just cause and that defendant did not have just cause to dismiss plaintiff. Defendant also appeals from an April 10, 1986, opinion and order which denied defendant's motions for judgment notwithstanding the verdict (JNOV), new trial, and relief from judgment. Additionally, defendant appeals from denial of a directed verdict at the close of plaintiff's proofs and the close of the case. Finally, defendant appeals from the February 8, 1985, denial of its motion for summary disposition.

Plaintiff filed a complaint against defendant alleging, inter alia, wrongful discharge in violation

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

of the rule in *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980). This was the only count of the complaint which went to the jury. Defendant requested a grant of summary disposition and a directed verdict on the *Toussaint* claim, on the basis that plaintiff was an employee at will. Both motions were denied.

Plaintiff testified that she was fired from the Michigan Consolidated Gas Company on September 13, 1983, after 18½ years of employment. At the time of her discharge, her salary was approximately $25,000 per year, and her benefits were worth approximately $5,000 per year. Plaintiff stated that the reasons for her discharge, as listed in a document in her personnel file, were dishonesty and falsification of company records.

Plaintiff began working for defendant on February 1, 1965. She held a series of positions in defendant's Ann Arbor office, the last of which was section chief in the Customer Service Department. Plaintiff's supervisor at the time of her discharge was Elmer Kuebler.

One of plaintiff's duties was to investigate problem accounts. One of the accounts which plaintiff was monitoring was that of Town and Country Apartments. Pat Fillinger, a co-worker of plaintiff, worked on the account for over one year before referring it to plaintiff in April, 1976. The bills on the account had been consistently incorrect. One of the first things that plaintiff did was to put the account in her own name, so that the bills were sent directly to her at the Ann Arbor office. She would then rebill the customer when she received the bill. This was done to verify the accuracy of each bill before sending it on to the customer, in an attempt to rectify the billing problems. According to plaintiff, this was a common practice among

the employees in her office when they were working on a bill and there was difficulty with the account. Plaintiff's supervisor, Elmer Kuebler, had put accounts in his own name.

Plaintiff attempted every month to correct various problems with the account, such as double billings, incorrect billings, and incorrect meter readings. However, these attempts were unsuccessful, apparently because the computer in Detroit rejected the efforts she made at correction. Before October of 1980, plaintiff estimated that she had at least twenty-five conversations about the account with Kuebler. In addition, she had numerous discussions with other people, including her co-workers and Kuebler's supervisor, Reno Maccardini, in an attempt to straighten the matter out. At this time, the customer was not making payments on the account.

In October of 1980, plaintiff decided to send out a settlement agreement to Town and Country in an attempt to elicit payment. The settlement agreement was for $43,000, the amount then owed. She told Kuebler that she was sending out the agreement. She alleges he advised her to change the "LCA" (last collection action), a computer code which shows what the last collection action on the account has been. Plaintiff believed she had authority to change LCA codes, though she had never changed one before. Plaintiff stated that at no time did Kuebler or anyone else explain to her the effects of changing an LCA code. She continued to change the LCA code on the account each month.

Plaintiff received no response to the settlement agreement. She sent out a second settlement agreement in July of 1981. At that time, she told Kuebler that she had sent out the agreement and asked him what else she should do about the account. He offered her no further suggestions.

Plaintiff continued to change the LCA and to monitor and send out the customer's bills until late 1982. At that time she stopped sending out the bills though she continued to change the LCA. Plaintiff stated that she stopped sending out the bills because it was a "user tactic" which people in her office used to try to force the customer to call in and inquire about the account. However, the customer did not call.

Plaintiff testified that at 9:00 A.M. on August 18, 1983, she was notified by Kuebler that she needed to attend a meeting at 1:00 P.M. that afternoon in the Detroit office regarding the Town and Country account. He advised plaintiff to bring any records she had in reference to Town and Country. Plaintiff took the bills which she had not sent out. The meeting was attended by Mr. Kuebler, Bill Glenn, manager of the business office, Jim Jannausch, and Keith Davy. Plaintiff was shown a list which documented the changes which she had made in the LCA codes. Jannausch asked her if anyone was "in on this" with her, whether she had received any personal gain, and whether she was being blackmailed. Plaintiff did not understand what was happening, but tried to explain the billing history of the account and defend herself against the charges. Kuebler said nothing. Plaintiff finally became very upset, began crying and ran from the meeting.

Later the next day, Kuebler informed her that she was to work the balance of the day, but not to report to work the next week. The following Monday, she called Mr. Glenn, who informed her that she had been suspended. Finally, on September 13, Kuebler called her and informed her that she was fired. When she asked for an explanation, all he would tell her was that she was fired for "falsifying company records." Plaintiff's personnel file

stated that she had falsified company records over a seven-year period involving amounts of $100,000 and had been terminated for falsifying company records and dishonesty.

Plaintiff testified that she was never told that she was an "employee at will." She stated that when she began working for defendant in January of 1965 she had to guarantee that she would remain for two years. Plaintiff testified that early in her career, she had received a written warning for chewing gum by her supervisor, Mr. Tucker. He informed her that if she received three written warnings, she would be fired. An employee handbook, a copy of which plaintiff had received, was introduced into evidence. It stated that such things as gambling, drinking and disorderly conduct on the job are prohibited. The parties stipulated that defendant also had a written policy which stated that an employee's employment could be terminated for excessive use of sick time.

Plaintiff stated that in 1977, when she applied for a mortgage on her home, Reno Maccardini, general manager of the Ann Arbor district, signed a statement indicating that she would be employed by defendant for the duration of the mortgage, twenty years. Plaintiff stated that once in 1979 and at least three times between 1980 and 1983, Kuebler informed her that as long as there was an Ann Arbor office she would have a job.

Plaintiff testified that, since her 1983 termination, she had sent out over one hundred resumes and had visited many different places of work to fill out applications. She stated that she had told prospective employers the truth about the reasons for her being discharged. Plaintiff had been unsuccessful in securing employment.

On cross-examination, plaintiff testified that, until the August 18, 1983, meeting, she did not know

that changing the LCA code to "00" prevented the company from taking collection action on an unpaid bill. She acknowledged, however, that at the August 18 meeting she did not tell anyone that Kuebler had advised her to change the code. She also acknowledged that she made no reference to Kuebler's advising her to change the code in the letter she wrote to the company contesting her discharge. She also conceded that she did not testify at her deposition that Kuebler had instructed her to change the code.

Plaintiff acknowledged on cross-examination that she continued to change the LCA code even though no response was made by Town and Country to her October, 1980, settlement agreement.

Plaintiff conceded that in her letter to the company she stated that she had stopped mailing out the Town and Country bills because the bill form had changed and she did not feel that she could continue sending out the old-style bills. She did not mention in the letter the company practice of stopping bills to force the customer to call. At trial plaintiff denied, however, that she stopped sending out bills because the bill form changed. Plaintiff acknowledged that she never told Kuebler that she had stopped sending out bills to Town and Country.

Four co-workers of plaintiff testified at trial in her behalf. Three of them testified that they had also changed LCA codes in the past; the fourth testified that she had never changed an LCA code because she was not authorized to do so. Two of the co-workers were familiar with the practice of withholding bills to provoke a customer to call the office.

At the close of plaintiff's proofs, defendant moved for a directed verdict on the ground that plaintiff had not made out a prima facie case that

she was anything other than an employee at will. The trial judge denied the motion.

In defense, defendant indicated that the settlement agreements that plaintiff sent out did not comply with company procedures, nor did changing an LCA code. Plaintiff's supervisor, Elmer Kuebler, denied telling her to change the LCA code, and he did not view this as an appropriate practice. He also stated that employees had been instructed not to have their names on accounts and that there was an approved procedure whereby the employees could intercept bills without putting their names on the accounts. Kuebler also stated that the practice of not sending out bills in order to get customers to call in was not approved procedure.

After the proofs were completed, defendant renewed its motion for a directed verdict on the basis that plaintiff was an employee at will. The trial court denied the motion. After instructions, the jury deliberated approximately four hours before finding that plaintiff was not an employee at will, that defendant did not have good cause to discharge plaintiff, and that plaintiff should be awarded damages of $560,000.

On appeal defendant contends that the trial judge erred in refusing to grant defendant's motions alleging that plaintiff was an employee at will. Defendant argues that plaintiff received no oral or written representations that she would not be discharged except for just cause and that she had no legitimate expectations grounded in employer policy statements that her employment would not be terminated but for just cause.

The trial judge did not err in denying defendant's motions for summary disposition, directed verdict, and JNOV or, in the alternative, new trial, on the basis that plaintiff was an employee at will.

There were sufficient representations made for a jury to find that an implied contract existed that plaintiff's employment would not be terminated except for just cause.

Michigan Court Rules provide that a party who has been denied summary disposition may proceed to final judgment and then bring an appeal of that denial. MCR 2.116(J)(2)(c). A motion for summary disposition under GCR 117.2(3), now MCR 2.116(C)(10), tests whether there is factual support for a claim. When passing on such a motion, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence available to it. The party opposing summary disposition has the burden of showing that a genuine issue of disputed fact exists. Giving the benefit of reasonable doubt to the plaintiff, the court must determine whether the kind of record which might be developed will leave open an issue upon which reasonable minds might differ. The appellate court is liberal in finding a genuine issue of material fact. *Ambro v American National Bank & Trust Co of Michigan,* 152 Mich App 613, 620; 394 NW2d 46 (1986).

In reviewing a trial court's denial of a motion for a directed verdict, this Court must view the evidence in the light most favorable to the nonmoving party and determine whether a prima facie case was established. If there were material issues of fact upon which reasonable minds could differ, they were properly admitted to the jury. *Hall v Citizens Ins Co of America,* 141 Mich App 676, 682; 368 NW2d 250 (1985). When faced with a motion for JNOV, the court must view the evidence in the light most favorable to the nonmoving party and decide if the facts presented preclude judgment for the nonmoving party as a matter of law. If the evidence is such that reasonable men could

differ, the question is one for the jury and JNOV is improper. *Drummey v Henry,* 115 Mich App 107, 110-111; 320 NW2d 309 (1982), lv den 417 Mich 895 (1983). This Court does not reverse the trial court's decision to deny a motion for a new trial unless the trial court abused its discretion by doing so. *Willett v Ford Motor Co,* 400 Mich 65, 70-71; 253 NW2d 111 (1977).

The trial judge did not err in denying defendant's motions. In *Toussaint* the Supreme Court held that a provision of an employment contract providing that an employee shall not be discharged except for just cause is legally enforceable and that such a provision could become part of the contract either by express agreement, oral or written, or as a result of "an employee's legitimate expectations grounded in an employer's policy statements." *Id.,* 598. In the instant case, the representations which were made to plaintiff by her employer were sufficient, at each dispositive motion, to create a question for the jury as to whether a contract for just-cause termination existed.

Next, defendant argues that the jury verdict that defendant did not have just cause to dismiss plaintiff was contrary to law and against the great weight of the evidence. Defendant contends that when an employer enters into a contract which requires cause for discharge, the employer must be permitted to establish its own standards for job performance and dismiss employees for nonadherence to those standards.

We find that the trial judge did not err in denying defendant's motion for JNOV or, in the alternative, a new trial. The jury verdict that defendant did not have just cause to dismiss plaintiff was not contrary to law or against the great weight of the evidence.

The trial judge held, in denying defendant's motion for JNOV or a new trial:

> In regard to the first issue, Defendant characterizes this case as one in which Plaintiff clearly violated the terms of her contract, and maintains that it is improper for a jury to decide whether the standard set in the contract is really good cause. This Court disagrees with Defendant's characterization of this case. The jury was not asked to decide whether the contractual standard was correct. Rather, it was left for the jury to decide whether, in light of the circumstances, Plaintiff had actually violated the terms of her contract. Clearly, if Plaintiff had received a written memorandum instructing her to do something which was later discovered to violate her contract, her actions could not be used as grounds for dismissal for good cause. In the instant case, Plaintiff claimed that her actions were proper, given the knowledge she had at the time, and her training for the job. The jury's role in this case was to decide in fact whether her actions violated the terms of her contract. Presentation of this issue to the jury was proper.

Defendant argues that this is a case such as *Obey v McFadden Corp,* 138 Mich App 767; 360 NW2d 292 (1984), in which the defendant employer's policies specifically prohibited outside work for pay and listed it as a reason for discharge. Since the plaintiff engaged in the prohibited conduct, the *Obey* Court stated that the trial judge erred in denying the defendant's motion for JNOV on the "good cause" issue. Defendant also cites *Toussaint, supra,* which states that when an employer enters into a contract with an employee which requires cause to discharge, the employer must be permitted to establish its own standards for job performance and to dismiss employees for nonadherence to those standards:

An employer who agrees to discharge only for cause need not lower its standard of performance. It has promised employment only so long as the employee does the job required by the employment contract. The employer's standard of job performance can be made part of the contract. Breach of the employer's uniformly applied rules is a breach of the contract and cause for discharge. In such a case, the question for the jury is whether the employer actually had a rule or policy and whether the employee was discharged for violating it. [*Toussaint, supra,* 408 Mich at 623-624.]

Since plaintiff admitted that she falsified company records, defendant argues, the trial judge should have granted defendant's motion for JNOV on the just-cause issue.

Defendant is not entitled to JNOV or a new trial. This is not a case, as in *Obey,* where the proscribed conduct is clearly delineated. Plaintiff presented evidence that it was a regular practice in her department to change LCA codes. Given this evidence, it is far from clear that changing the LCA codes constituted "falsifying company records." As the trial judge stated, "[t]he jury's role in this case was to decide in fact whether or not her actions violated the terms of her contract." This necessitated that plaintiff's actions be put in their complete factual context.

Defendant also contends that the trial judge erred by refusing to give a requested jury instruction. Defendant requested that the following instruction be read to the jury:

9. I further instruct you members of the jury that an employee's subjective belief that she would not be discharged except for cause is not sufficient to establish a contract which is terminable for just cause. Such a contract must be established based upon direct or explicit words between the parties

or by reasonable implications based upon conduct, policies and procedures of the company that it will discharge only where there is just cause.

Where requested jury instructions correctly state the law applicable to the facts, it is error to refuse to give them unless the requests are covered by the general charge in a fair and adequate manner. *Timmerman v Universal Corrugated Box Machinery Corp,* 93 Mich App 680, 684; 287 NW2d 316 (1979). Although defendant's requested instruction correctly stated the law, it was adequately covered by the general charge. The trial judge instructed the jury:

> I instruct you, members of the jury, that contracts for permanent employment and contracts for employment for an indefinite period of time are terminable at will of either party, unless Plaintiff proves otherwise.
>
> I further instruct you that even though the Plaintiff might have understood that she was employed for an indefinite period, that fact alone is not sufficient to convert her contract into one which is terminable for just cause.
>
> You are instructed that it is the law in Michigan that an employee in order to prevail in an unlawful discharge case, such as this one, does not have to allege or prove reliance on an employer's promises or establish that she is or was aware of the particulars of the just cause or good cause policy for determination. You are instructed that if you find that the Defendant agreed either orally or in writing not to terminate Plaintiff without good cause or that the Plaintiff had a legitimate expectations [sic] based upon the Defendant's policy statement that she would not be discharged without good cause, and you find that the Defendant's termination of the Plaintiff was not for good cause, then you must find that Plaintiff was wrongfully discharged by the Defendant.

These instructions fully set forth the requirements for a just-cause contract as enumerated in *Toussaint;* they also include a subjective belief instruction similar to that which defendant requested. No error occurred.

Next defendant argues that the damage award in the instant case is excessive as a matter of law and that the trial judge erred in refusing to grant relief from the operation of the judgment if the defendant agreed to reinstate plaintiff. Finally, defendant contends that the trial judge erred in refusing to approve an agreement whereby the plaintiff's damages would be distributed to her annually, offset by any income received from subsequent employment, upon a showing that she made reasonable efforts to mitigate damages.

Plaintiff presented expert testimony at trial that her lost past wages and benefits were approximately $40,000 and that her lost future wages and benefits, reduced to present-day value, were in excess of $1,000,000. The future wage figure was based on the forty-year-old plaintiff's not attaining another job in the next thirty years, until she reached the retirement age of seventy. Defendant did not present an opposing expert or object to the trial judge's instructions regarding future damages. The jury verdict awarded plaintiff $560,000, approximately $520,000 of which, presumably, was for future damages.

The trial judge denied defendant's motions, stating:

> The third issue is whether front pay damages were proper in this case. No Michigan Appeals court has yet ruled on the propriety of front pay damages in a *Toussaint* case. The award of front pay is an issue governed by the sound discretion of the trial court. *Davis v Combustion Engineering,*

742 F2d 916, 923 (6th Cir 1984). This Court finds that front pay is permissible in this case. Plaintiff was dismissed from her job after accusations of wrongdoing. Although the jury in this case found her actions did not constitute wrongdoing, it is likely the accusations will make it more difficult for her to obtain employment. In addition, given Plaintiff's education, it is unlikely that she will be able to find employment at near the same level as her previous employment.

Finally, Defendant maintains that this Court should retain jurisdiction over this case, require Plaintiff to mitigate her damages, and deduct any such mitigation from Plaintiff's award. This Court finds this unnecessary. The jury award was about one-half of the possible award, based on the testimony of Plaintiff's witness. Thus, it appears that the jury took into account the possibility of mitigation.

For the reasons above, Defendant's Motions for Judgment Notwithstanding the Verdict, New Trial, and Relief from Judgment are DENIED.

Recently this Court was faced with a similar issue in *Riethmiller v Blue Cross & Blue Shield of Michigan,* 151 Mich App 188; 390 NW2d 227 (1986), an age discrimination case under the Civil Rights Act. In *Riethmiller,* the trial judge, relying on federal precedent interpreting the Age Discrimination and Employment Act (ADEA), 29 USC 621 *et seq.,* had held that the plaintiff was not entitled to future damages since he had not sought reinstatement to his job. This Court noted the split of authority in federal courts regarding the availability of future damages under the ADEA, with some courts holding that future damages are never permissible because of the ADEA's statutory design and because such damages are inherently too speculative and other courts permitting front pay under the ADEA in certain circumstances.

While conceding that the issue of front pay was a troubling one, the *Riethmiller* Court determined that, absent legislative amendment, front pay should be permissible under the Civil Rights Act in certain circumstances. The Court held that, in deciding whether to award front pay damages, a court should look to (1) whether reinstatement would be a feasible remedy; (2) what the employee's prospects are for other employment, and (3) how many years remain before the employee would be faced with mandatory retirement. However, a determination of whether front pay would be awarded is in the trial court's discretion. *Id.,* 200-201.

We find *Riethmiller* analogous to this case and thus hold that future damages are permissible in a *Toussaint* case. In general in a breach of contract claim the injured party may recover those damages which are a direct, natural and proximate result of the breach. *Walter Toebe & Co v Dep't of State Highways,* 144 Mich App 21, 36; 373 NW2d 233 (1985), lv den 424 Mich 860 (1985). In some cases of wrongful discharge, as in the instant case, a plaintiff will have difficulty finding employment of any type for some time after the discharge. When appropriate then, future damages in the way of front pay are permissible.

Defendant argues that, even if front pay is permissible in a *Toussaint* case, the award of future damages in this case is excessive as a matter of law, since investment of the amount would produce yearly interest greater than plaintiff's salary at the time of her discharge and still leave the principal amount untouched. Thus, defendant contends that the trial court erred by denying defendant's motion for a new trial pursuant to MCR 2.611(A)(1)(c), (d) or (e), or, alterna-

tively, to enter a remittitur pursuant to MCR 2.611(E).

Our careful review of the record and the trial court's opinion and order of April 10, 1986, which denied defendant's motion for JNOV, a new trial, and relief from judgment, made no finding and rendered no decision regarding defendant's remittitur request. Thus, we remand to the trial court for findings of fact on the remittitur issue. The trial court may request further arguments or support by the parties on this issue, if in its discretion such is required.

Finally, defendant argues that the trial court erred in refusing to disburse plaintiff's award in annual payments equivalent to her salary, offset by any earnings, and contingent upon proof of reasonable mitigation efforts. As plaintiff states, this proposition would "involve the court in a judicial quagmire of gargantuan proportions." In effect, it would require a hearing every year for the next thirty years. The trial judge did not err in refusing to grant this requested relief.

We affirm in part and reverse and remand on the remittitur issue. We retain jurisdiction.

Affirmed in part, reversed in part and remanded.