MARK A. RENNER, APPELLANT, V. ROBERT H. WURDEMAN AND
WURDEMAN OF OMAHA, INC., A NEBRASKA CORPORATION,
APPELLEES.

434 N.W.2d 536

Filed January 27, 1989.    No. 87-132.

Warren S. Zweiback, Susan Wiesner, and Mary Lou Perry, of Zweiback, Flaherty & Lamberty, P.C., for appellant.

H. Daniel Smith, of Smith, Trustin & Schweer, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Plaintiff has appealed from the order of the district court which dismissed his second amended petition filed against Robert H. Wurdeman and Wurdeman of Omaha, Inc. The dismissal was based on the court's sustaining the defendants' motion for summary judgment. Although plaintiff specifies five errors, in actuality they may be distilled down to the claim that the court erred in finding that there were no genuine issues of material fact.

Mark Renner, the plaintiff, was employed in 1972 as a salesman by Wurdeman of Omaha, Inc. (the company), a real estate company. In 1978, Robert Wurdeman, then the sole shareholder of the company, had surgery on his hip. According to the testimony of Wurdeman, Renner helped out during Wurdeman's period of convalescence. Upon Wurdeman's return, he told Renner, "I will give you one share" (of the stock of the company) for the work Renner did in helping out during Wurdeman's disability. However, the paperwork, the issuance of the share of stock, was never accomplished. This took place

in about November of 1978.

Renner's testimony, although differing slightly from that of Wurdeman, would seem to result in the same conclusion. He testified that Wurdeman told him that he, Wurdeman, was so excited about the good job that Renner had done while he (Wurdeman) was temporarily incapacitated due to the surgery, "he [Wurdeman] was going to begin our relationship by — by reimbursing, instead of money, two percent stock in the company." However, Renner admitted that he had never received any stock certificate.

On June 11, 1979, Renner and Wurdeman signed a stock option agreement recognizing that "Renner has purchased _____ shares of the stock of Wurdeman Real Estate Company (which is approximately two percent (2%) of the outstanding shares) . . . ." In addition, Renner was given the option to purchase an additional 2 percent of the company's stock for each calendar year, commencing with 1979, for so long as he remained employed by the company. As a condition precedent to exercising the option, Renner had to be employed on the annual stock option date, March 31. On the same day, Renner, Wurdeman, and the company entered into a stock restriction agreement. Under the agreement, neither Renner nor Wurdeman could transfer the stock of the company that he owned to outsiders without having first offered to sell the stock to the other. The agreement provided that it could be terminated by the written agreement of all shareholders and the company.

In 1983, Renner and the company entered into an employment contract which established that Renner was an independent contractor whose employment was terminable at will.

On January 29, 1985, Renner attempted to exercise the option for the first time to purchase 12 percent of the stock of the company. On January 31, 1985, Wurdeman notified Renner that his request was being denied. Furthermore, the company gave Renner notice that his employment contract was terminated. Wurdeman and the company, by written agreement, terminated the stock restriction agreement. Subsequently, Wurdeman entered into an agreement to sell 75

shares of the stock of the company to third persons without having first offered the stock to Renner.

Renner brought this action for damages, alleging three causes of action: (1) breach of contract involving the stock option agreement and the stock restriction agreement; (2) tortious interference with the business relationship because of the breach of the previous listed written contracts; and (3) breach of an oral contract employing Renner as a manager of the company. Additionally, there was a fourth cause of action involving a small item of unreimbursed expenses which is not argued, nor will it be considered on appeal.

The defendants, in their amended answer to the operative petition of the plaintiff, admitted the execution of the stock option agreement and the stock restriction agreement, alleged the existence of the written employment contract, alleged the failure of the plaintiff to exercise his rights under the stock option agreement in a timely manner, and denied that plaintiff was ever a stockholder of the company.

By order dated January 22, 1987, the trial court sustained the defendants' motion for summary judgment. In doing so, the court found that plaintiff's second and third causes of action were redundant to the first cause of action for breach of contract. The conclusion that the second cause of action was redundant would seem to rest, in part, on the fact that if plaintiff was not a shareholder and therefore acquired no rights under the stock option agreement or the stock restriction agreement (which could be terminated by agreement of the company and all the shareholders), and the plaintiff was bound by the written employment agreement and therefore could be terminated without cause, then Wurdeman and the company, the parties with whom Renner had the contractual relationship, acted properly under the terms of the contracts, and there could be no tortious interference with a business relationship. The conclusion that the third cause of action was redundant would seem to rest on the fact that plaintiff's claim that the company breached an oral agreement whereby he would perform managerial services for the company in return for eventual ownership of the company rather than contemporaneous compensation is essentially the same as his claim that

defendants breached the stock option and stock restriction agreements by wrongfully discharging him because the oral agreement changed his at-will employment to employment that could be terminated only for cause.

We then turn to the question of whether the district court correctly ruled that defendants were entitled to summary judgment on the first cause of action.

In an appellate review of a summary judgment, the reviewing court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988).

Summary judgment is appropriate only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts and that the moving party is entitled to judgment as a matter of law. *Id.*

The essential facts are not in dispute. There are, however, two troublesome questions this court needs to answer in order to determine whether summary judgment on plaintiff's first cause of action was proper: first, whether it can be concluded that Renner was ever a shareholder of the company, and second, whether Renner has a colorable claim for wrongful termination of employment. The facts are clear that Renner never exercised his option to purchase stock under the stock option agreement on the designated dates and while he was still employed by the company. If Renner never became a shareholder before the stock option agreement was entered into, the stock restriction agreement was legally terminated by the agreement of the company and Wurdeman (who would have been the only shareholder of the company). If Renner was legally terminated from his employment contract, he had no right of continued employment until the next annual stock option date, March 31, 1985, in order that he could exercise his option.

## WAS RENNER EVER A SHAREHOLDER?

Renner, in arguing that the receipt of a certificate is irrelevant

to ownership of stock, cites us to *Pacific National Bank v. Eaton*, 141 U.S. 227, 11 S. Ct. 984, 35 L. Ed. 702 (1891), and *Federal Deposit Ins. Corporation v. Gunderson*, 106 F.2d 633 (8th Cir. 1939).

In *Gunderson*, the court stated:

[T]here is a distinction between the certificate issued to a shareholder and the "share" issued to him. The distinction is recognized by the authorities. A share of stock is the actual property of the shareholder, while the stock certificate · is merely the authentic evidence of the stockholder's ownership of shares. [citations omitted.] . . . [C]orporate stock, when paid for, is "issued" regardless of the execution and delivery of the certificate, which is merely evidence of the stockholder's interest.

*Id.* at 634-35.

Renner further contends that, pursuant to Neb. Rev. Stat. § 21-2018 (Reissue 1987), he "paid for" the stock by providing services to the company while Wurdeman was hospitalized. Section 21-2018 provides in pertinent part:

No corporation shall be permitted to issue stock except for an equivalent in money paid or labor done, or property actually received and applied to the purpose for which such corporation was created. Neither promissory notes nor future services shall constitute payment or part payment for issuance of shares of a corporation. When payment of the consideration for which shares are to be issued shall have been received by the corporation, such shares shall be deemed to be fully paid and nonassessable.

It is clear from *Eaton, supra, Gunderson, supra*, and § 21-2018 that possession of a stock certificate is irrelevant to ownership of the stock if the stock in dispute was purchased from the issuing company. In the case at bar the question then becomes, Did Wurdeman intend to give Renner a share of the company that he, Wurdeman, himself owned, or did he intend to have the company give Renner a share of stock for the services Renner had provided? If Wurdeman intended to give Renner a share he personally owned, the fact that Wurdeman did nothing may mean that Renner did not become a shareholder. The essential elements of a gift inter vivos are

donative intent, delivery, and acceptance. See *Guardian State Bank & Trust Co. v. Jacobson*, 220 Neb. 235, 369 N.W.2d 80 (1985).

On the other hand, if Wurdeman intended the company to issue Renner a share of stock, the fact that Wurdeman did nothing would not mean that Renner did not become a shareholder.

The answer to this problem must be determined from the inferences that are to be drawn from the facts recited in the depositions of the two principals. The record is such that we cannot say as a matter of law what the source of the intended stock acquisition was to be. This is a conclusion that must be drawn by the fact finder, and, accordingly, summary judgment was improperly granted.

## COULD WURDEMAN UNILATERALLY TERMINATE THE STOCK RESTRICTION AGREEMENT?

The stock restriction agreement provided that it could be terminated by the written agreement of all shareholders and the company. Such an agreement was executed only by Wurdeman and the company. If Wurdeman was the only shareholder, the agreement on its face was valid and effective. If, however, Renner had become a shareholder, then his consent to the termination agreement was necessary, and the termination agreement would not be valid.

## WAS RENNER'S TERMINATION IN BAD FAITH?

Pursuant to the broker-salesperson contract entered into by Renner and the company in 1983, Renner's employment was at will. He contends, however, that the company, bound by an implied covenant of good faith, terminated his employment solely in order to deny him the opportunity to exercise his stock option rights, and, therefore, the company wrongfully terminated that employment in bad faith.

The general rule in Nebraska is that when the employment is not for a definite term, and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses without incurring liability. *White v. Ardan, Inc.*, 230 Neb. 11, 430 N.W.2d 27 (1988); *Stratton v. Chevrolet Motor Div.*, 229 Neb. 771, 428 N.W.2d 910 (1988);

*Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987).

Furthermore, except in cases where an employee is deprived of constitutional or statutory rights or where contractual agreements guarantee that employees may not be fired without just cause, the law in this state continues to deny any implied covenant of good faith or fair dealing in employment termination. *Stratton, supra*; *Jeffers v. Bishop Clarkson Memorial Hosp.*, 222 Neb. 829, 387 N.W.2d 692 (1986).

However, Renner claims that Wurdeman made oral representations to him that if he provided management services for the company, he would not get paid for the work at the time, but would receive the benefits of the increased profits generated by his labor when he owned the company in the future.

Recently, this court, in *Hebard v. AT&T*, 228 Neb. 15, 421 N.W.2d 10 (1988), reiterated that an employee's at-will status can be modified by contractual terms that may be created by employee handbooks and oral representations. "Oral representations may, standing alone, constitute a promise sufficient to create contractual terms which could modify the at-will status of an employee." *Id.* at 17, 421 N.W.2d at 12. In *Hebard*, the court went on to say:

> In the case at bar, we express no opinion as to whether the conduct of the appellee, in making certain representations to Hebard, indicates a promise which might constitute terms of an employment contract. Whether such conduct indicates a promise is a question of fact for a trier of fact.

*Id.* See, also, *Toussaint v Blue Cross*, 408 Mich. 579, 292 N.W.2d 880 (1980); *Ritchie v Mich Con Gas Co*, 163 Mich. App. 358, 413 N.W.2d 796 (1987). Thus, it would seem that there is an unresolved question of fact as to whether or not Wurdeman made representations to Renner and, if so, whether the representations indicated a promise which modified Renner's at-will employment.

## DID WURDEMAN INTERFERE WITH RENNER'S CONTRACTUAL RELATIONSHIP WITH THE COMPANY?

One of the basic elements of tortious interference with a

business relationship requires an intentional act inducing or causing a breach or termination of the relationship or expectancy. *Miller Chemical Co., Inc. v. Tams*, 211 Neb. 837, 320 N.W.2d 759 (1982).

For his tortious interference cause of action, Renner, in his second amended petition, alleged that

> Defendant Wurdeman, in his individual capacity, and Defendant Wurdeman of Omaha, Inc. entered into a conspiracy whereby said Defendants . . . terminated the Plaintiff and intentionally interfered with this business relationship [of Plaintiff to buy stock of the company and to act as a broker-salesperson] and Plaintiff's contract rights.

Renner seems to be arguing that Wurdeman the individual did not want to honor the stock option agreement and, therefore, caused himself, as the president of the company, to have the company terminate Renner's employment so that Renner could not satisfy the condition precedent to his right to exercise the option.

This court has said in *Dixon v. Reconciliation, Inc.*, 206 Neb. 45, 52, 291 N.W.2d 230, 234 (1980), quoting from *Soft Water Utilities, Inc. v. Le Fevre*, 159 Ind. App. 529, 308 N.E.2d 395 (1974): " 'A corporation cannot conspire with an agent when that agent is *acting within the scope of his authority.* A corporation acts through its agent and the acts of the agent are the acts of the corporation.' " (Emphasis in original.) Therefore, a corporate official can conspire with the corporation only if he is acting in his individual capacity. However, in order "[t]o set forth a claim of conspiracy between a corporation and its corporate employees, the petition must allege that the latter are acting outside the scope of their authority or other than in the normal course of their corporate duties." *Dixon, supra* at 52, 291 N.W.2d at 234.

Defendants claim that Renner's petition fails to allege that Wurdeman acted outside the scope of his corporate duties. Although a petition should not leave uncertainty as to the theory on which the pleader wishes to proceed, this court has held that in actions not involving extraordinary remedies,

general pleadings are to be liberally construed in favor of the pleader. See *Hutmacher v. City of Mead*, 230 Neb. 78, 430 N.W.2d 276 (1988). Renner alleged that Wurdeman "in his individual capacity" conspired with the company to interfere with his contract rights. Liberally construing the petition in favor of Renner, it can be said that Renner, by alleging that Wurdeman acted in his individual capacity, was alleging that Wurdeman acted outside the scope of his corporate duties.

The district court found Renner's tortious interference claim to be redundant of his claim that Wurdeman and the company breached the stock option and stock restriction agreements. If Wurdeman and the company acted properly under the terms of the contracts, then there can be no claim for tortious interference with a business relationship. See, *Neff v. World Publishing Company*, 349 F.2d 235 (8th Cir. 1965); Prosser and Keeton on the Law of Torts, *Economic Relations* § 129 (5th ed. 1984); 45 Am. Jur. 2d *Interference* § 26 (1969). If, on the other hand, Wurdeman and the company acted improperly in terminating Renner's employment to prevent the exercise of Renner's rights under the stock option agreement, then Renner does have a basis for claiming that Wurdeman may have acted in his individual capacity and tortiously interfered with Renner's business relationship with the company.

Since it cannot be said as a matter of law that the company had the right to terminate Renner's employment for any cause or no cause at all, summary judgment was as inappropriate on Renner's second cause of action as it was on the first.

WAS THERE A BREACH OF ORAL AGREEMENT?

This claim is, as found by the trial court, redundant of Renner's claim that defendants breached the stock option and stock restriction agreements by wrongfully terminating his employment in order to prevent him from exercising his stock option. Therefore, summary judgment on Renner's third cause of action was proper.

For the reasons set forth above, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.