JOHN A. SHAW, APPELLANT, V. THE WESTERN SUGAR COMPANY, APPELLEE.

497 N.W.2d 688

Filed December 15, 1992.   No. A-90-485.

Joy Shiffermiller, of Atkins Ferguson Zimmerman Carney, P.C., for appellant.

James R. Hancock, of Hancock & Denton, P.C., for appellee.

SIEVERS, Chief Judge, and CONNOLLY and MILLER-LERMAN, Judges.

MILLER-LERMAN, Judge.

Appellant, the late John A. Shaw, brought an action at law against appellee, The Western Sugar Company, for damages, claiming wrongful termination from employment. Following his death, the motion of Shaw's personal representative to revive the action was granted by the Nebraska Supreme Court. Shaw claimed he was wrongfully terminated in violation of (1) the Occupational Safety and Health Administration's (OSHA)

prohibition against retaliatory firing of employees who cooperate with OSHA, (2) Western Sugar's internal disciplinary procedures, and (3) an oral contract of employment. Prior to trial, Shaw filed a motion for default judgment against Western Sugar, which motion was denied. The case proceeded to trial before a jury in the district court for Scotts Bluff County. At the close of Shaw's case, the trial court granted Western Sugar's motion for a directed verdict. This appeal followed. On appeal, Shaw claims that the trial court (1) abused its discretion in denying Shaw's motion for default judgment, (2) erred in granting Western Sugar's motion for directed verdict in that there was evidence from which a jury could have found in Shaw's favor, and (3) erred in excluding evidence of Shaw's emotional distress, as it related to his damage claim. For the reasons recited below, we affirm.

### DENIAL OF MOTION FOR DEFAULT JUDGMENT

Shaw's amended petition was filed and served by mail on January 13, 1989. On March 8, Shaw's counsel wrote to Western Sugar's counsel, inquiring about a responsive pleading. In a letter dated March 15, Western Sugar's counsel indicated that a responsive pleading would be forthcoming "soon." On April 10, Shaw filed a motion for default judgment. On April 13, Western Sugar filed a one-page answer, followed on April 20 by a motion to file an answer. At the hearing on April 26, the trial court expressed a reluctance to conclude the case by way of default and, accordingly, denied the motion for default judgment and permitted the filing of the tardy answer.

Although the record does not contain a compelling excuse by Western Sugar for waiting 2 months to respond to the amended petition, the trial court found that correspondence among counsel indicated Western Sugar's intent to contest the claim and that it is the policy of the law to give a litigant full opportunity to present its contentions. See Neb. Rev. Stat. § 25-822 (Reissue 1989).

Under all the facts, we do not find that the trial court abused its discretion in denying Shaw's motion for default judgment. See *Mason State Bank v. Sekutera*, 236 Neb. 361, 461 N.W.2d 517 (1990).

## GRANTING OF DIRECTED VERDICT

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the judgment is made, the case may not be decided as a matter of law. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992); *Leonard v. Wilson*, 238 Neb. 1, 468 N.W.2d 604 (1991); *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988).

*Facts.*

The record shows that Shaw had worked at Great Western Sugar Company since 1954 and that following Great Western's bankruptcy in 1985 he continued to be retained by Western Sugar, appellee herein, successor to Great Western. Although Shaw was a factory worker with Great Western, the record supports the conclusion that he became a "warehouse packaging coordinator" with some supervisory duties when Western Sugar took over.

One of the tasks at the sugar plant is "reclaiming" of sugar. The sugar can get hard and fail to flow freely in the bins to the "glory holes." When this happens, the hardened sugar needs to be broken up. Most bins have mechanical reclaimers to accomplish this; however, at Western Sugar's Scottsbluff facility, four bins had to be reclaimed by sending workers into the bins.

In June 1986, Shaw had a series of responsibilities associated with his duties as a warehouse packaging coordinator. These responsibilities included notifying his supervisor if a sugar bin stopped running and needed to be reclaimed, supervising the sugar packaging lines, overseeing the overhauling of packaging machines, and coordinating the removal of obsolete paper from a warehouse in town. On the day before the accident, Shaw reported to his supervisor, factory manager Lew Zemanek, that a bin had stopped running. After being told to

fix the problem, Shaw and a coworker, Henry Sturgeon, who had reclaimed hundreds of bins, examined the bin, noting there were no overhangs. Subsequently, men were sent in to reclaim the sugar while Shaw went about his other duties. On June 13, 1986, Randy Rice, one of the workers reclaiming the bin, slid down into a glory hole, was covered by sugar, and suffocated.

The record contains various versions of the safety precautions historically taken and enforced by Western Sugar in connection with reclaiming. It is undisputed that no safety belts or lifelines were being used on the date of the fatality because there were no hardened sugar overhangs or walls which could fall on a worker in the bin. The record suggests that over the years the use of safety belts and lifelines was minimal, although they were used by Western Sugar in reclaiming in 1985 if an overhang was present. According to the record, the standard number of men used to reclaim was four and the company had two safety ropes which on the day of the accident were not operational because clips were missing or stolen.

Following the accident, Western Sugar formed a Safety Investigation Committee. The record supports the conclusion that the committee was formed to determine the cause of the accident and to prevent a recurrence. Shaw testified he was told by the committee that the committee was "not trying to establish any blame" and that the committee wanted to find out what happened. During the investigation, but after Shaw had visited with the committee, Shaw was fired. Zemanek testified that Shaw was fired because of the accident, based on Zemanek's personal investigation. OSHA subsequently investigated the accident and fined Western Sugar. Shaw brought this action for wrongful termination, which action was tried under a variety of theories.

*Theory of Action: OSHA.*

Shaw argued that his firing was retaliatory and that he was fired to prevent him from talking with the OSHA representative due the next day. Shaw argues that his termination violates 29 U.S.C. § 660(c)(1) (1988), which generally makes it unlawful to fire a worker for cooperating with an OSHA investigation.

There is no private right of action under § 660(c)(1).

*Donovan v. Occupational Safety & Health Rev.*, 713 F.2d 918 (2d Cir. 1983). Instead, an employee who feels he or she has been wrongfully terminated in retaliation for cooperating with or for being about to cooperate with OSHA is required to file a complaint with the Secretary of Labor within 30 days, and if the Secretary finds the complaint meritorious, the Secretary may bring suit against the employer. § 660(c)(2); *Powell v. Globe Industries, Inc.*, 431 F. Supp. 1096 (N.D. Ohio 1977). Since Shaw did not have a private cause of action for wrongful termination against Western Sugar based on his intention to cooperate with OSHA, the court's dismissal of this theory of action by granting the motion for a directed verdict was not error.

*Theory of Action: In-House Disciplinary Policy.*

Shaw claimed he was wrongfully terminated because Western Sugar did not follow its own procedure for disciplining employees. The discipline procedure policy on which Shaw relies is contained in a memo, exhibit 18, which reads in relevant part:

> Disciplinary action will be taken in a non-discriminatory, uniform manner as determined necessary by Supervision. Progressive disciplinary action, as outlined below, will be used in all cases unless the nature of an offense is so severe as to warrant a higher level of discipline.
>
> First Step - Counseling by Supervision (documentation not required).
>
> Second Step - Written Reprimand (documentation to be placed in employee's file).
>
> Third Step - Final Warning (documentation to be placed in employee's file).
>
> Fourth Step - Discharge (documentation to be placed in employee's file).
>
> No disciplinary action beyond the First Step will be deemed to have occurred unless documented in the employee's file. Documentation of disciplinary action is a permanent part of the employment record and by law can

not [sic] be discarded. Disciplinary action at the Second Step will not be considered after one year from the most recent occurrence. Final warnings (Third Step) will not be considered current after two years from the most recent infraction.

Disciplinary suspension has been purposely left out of this procedure. Its use is of questionable value and can often be counter productive [sic] to the interests of both the employee and the Company. "Suspension pending review" can be used in extreme cases when it is desirable to remove an employee from the workplace. "Suspension pending review" should not create lost time from work of more than three days. Subsequent review by the appropriate Location Manager should result in the discharge of the employee or a lesser reprimand and payment to the employee of all lost wages.

At trial there was considerable testimony as to whether exhibit 18 was applicable to Shaw. Shaw contended that exhibit 18 was addressed to "[a]ll employees" and applied to him. Western Sugar contended that the policy was limited to nonmanagement workers.

In ruling on the directed verdict, the court took the evidence, exhibit 18, in a light most favorable to Shaw and assumed that he was a beneficiary of the discipline procedure notwithstanding his supervisory duties. The trial court concluded, however, that the discipline procedure was not violated in Shaw's case because, under its provisions, the progressive disciplinary action outlined therein would not be followed where "the nature of an offense is so severe as to warrant a higher level of discipline." The trial court reasoned that assuming Shaw's alleged failure to supervise resulted in a fatality, this offense was so severe as to warrant a higher level of discipline and that to apply a progressive approach would require three additional fatalities before Western Sugar could discharge an employee. We agree with the trial court's reasoning and conclusion and find it was not error to grant the motion for a directed verdict dismissing Shaw's theory of action based on alleged violations of the progressive discipline procedures.

*Theory of Action: At-Will Employment Amended by Oral Contract.*

Shaw claimed he was wrongfully terminated because his at-will employment status was amended by the Safety Investigation Committee's alleged promise that he would not be fired. Specifically, Shaw argues that the committee assured him that no one would be fired because of the committee's investigation of the accident. Shaw claims that he was forthcoming with the committee, but that he was fired nevertheless. Western Sugar claimed that Shaw was an employee at will and without contractual protection. Western Sugar further argues that no promises were made by the committee. Finally, Western Sugar argues that even if a promise was made by the committee that no one would be fired as a result of the committee's investigation, the committee was without authority to bind Western Sugar.

The record supports the conclusion that Shaw's employment was for an indefinite period of time and that he was an employee at will. In Nebraska an employee at will may be discharged without cause except where the discharge infringes upon a constitutionally protected interest of the employee or where a statute or contract prohibits an employer from discharging an employee for a particular reason or without good cause. *White v. Ardan, Inc.*, 230 Neb. 11, 430 N.W.2d 27 (1988). Oral representations may constitute a promise sufficient to create contractual terms which modify the at-will status of an employee. *Hebard v. AT&T*, 228 Neb. 15, 421 N.W.2d 10 (1988). See, also, *Renner v. Wurdeman*, 231 Neb. 8, 434 N.W.2d 536 (1989). In particular, it has been held that a cause of action for damages will lie where a company's investigating committee makes an express agreement with the employee who is subsequently fired and claims a breach of the investigating committee's agreement. *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 371 N.W.2d 732 (1985).

Although Shaw argues that the committee promised that no one would be fired as a result of the committee's investigation and findings, a reading of the record in a light favorable to Shaw does not support this alleged promise.

The critical trial testimony includes the following excerpts:

John Shaw testified: "They [the committee] approached me and said, 'We are not trying to establish any blame in this accident. We are just wanting to get the facts, and we are not trying to get anything on anybody. We just want to know what happened.' " 572:18-22.

Employee Stuart Schlothauer testified: "Well, they [the committee] just wanted to know what happened and the circumstances to it. They [the committee] said it was part of their — the union had to know what it was, and they were representing the union, and I do remember [committee member] Charlie Benton telling me that nobody would be fired out of this incidents [sic]." 422:15-20.

Committee Member Clinton Willey testified: "We told them [employees] that our — that our findings wasn't going to be the basis for firing anyone." [107:19.]

The evidence does not support Shaw's argument that he was promised that he would not be fired. Specifically, Shaw's own testimony as to what he was told by the committee does not amount to a promise. Indeed, the only promise that the record supports is that Western Sugar employees would not be fired because of the *committee's* investigation, and the record is undisputed that Shaw was fired by Zemanek based on Zemanek's immediate investigation of the accident. Shaw was fired while the committee was still investigating and without reference to the committee's work. For these reasons, we conclude that there was no evidence which could sustain Shaw's action based on the theory that his at-will status was modified by a promise of the committee. It was not error for the trial court to have granted the motion for a directed verdict as to this theory of action. Therefore, we affirm the trial court's grant of the motion for directed verdict.

## EXCLUSION OF EVIDENCE OF EMOTIONAL DISTRESS

On appeal, Shaw argues that the trial court's exclusion of evidence of his emotional distress following termination was error. Western Sugar does not address this issue in its appellate brief.

Under Nebraska law, damages for mental anguish and emotional distress are not recoverable in actions for breach of contract. *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991); *Brunson v. Ranks Army Store*, 161 Neb. 519, 73 N.W.2d 803 (1955). The cases reason that such damages are too remote and could not have been within the contemplation of the parties when the contract was made. Shaw notes that awards for mental anguish have been permitted in cases in other jurisdictions where the termination violated public policy. E.g., *Wiskotoni v. Michigan Nat. Bank-West*, 716 F.2d 378 (6th Cir. 1983) (application of Michigan law); *Smith v. Atlas Off-Shore Boat Service, Inc.*, 653 F.2d 1057 (5th Cir. 1981) (application of admiralty law). In view of our ruling that Shaw's case does not present enforcement of a public policy, we need not reach the public policy basis of Shaw's evidentiary appeal. Based on Nebraska law, we conclude that the trial court did not err in excluding Shaw's proffered evidence of emotional distress as it related to his damage claim. See *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991).

AFFIRMED.