BERNIECE O. STRATTON, APPELLANT, V. CHEVROLET MOTOR
DIVISION, GENERAL MOTORS CORPORATION, APPELLEE.
428 N.W.2d 910

Filed September 16, 1988.   No. 86-890.

Mary Kay Green and Clyde A. Christian for appellant.

Soren S. Jensen and J. Russell Derr, of Erickson & Sederstrom, P.C., for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WARREN, D.J.

WARREN, D.J.

This is an action brought by the plaintiff, Berniece O. Stratton, against the defendant, Chevrolet Motor Division of General Motors Corporation, for wrongful discharge from her employment with defendant. The action was tried to the district court, which found generally for the defendant and dismissed plaintiff's petition.

Plaintiff has appealed, assigning as error the failure of the trial court to find that defendant's employee handbook and personnel policies constituted a unilateral contract of employment which defendant breached by (1) failing to give this long-term employee a mandatory second chance by transfer to a new job; (2) failing to give plaintiff equal opportunity by restricting certain privileges and benefits to males only; and (3) violating its policy of fair dealing by placing plaintiff on probation, increasing her job duties, failing to give her adequate counseling and instruction while on probation, and terminating her employment before the end of the probationary period without notice. We affirm.

Stratton was employed by the Chevrolet Motor Division of GMC at its Omaha office from September 26, 1961, through February 13, 1981, initially as a PBX operator and receptionist, and after 1978, when defendant removed its PBX board and converted to a Centrex telephone system, as a clerk-stenographer. This position involved considerably more typing than previously, operating the telex system, answering the phone, filing, and handling customer contacts. Prior to November 1978, plaintiff's performance evaluations generally indicated an efficient, cooperative, and knowledgeable handling of her work duties, but her job performance rapidly deteriorated thereafter. Problem areas included gross and repeated mistakes in her typing of letters and reports, errors in

posting and filing, and generally poor job performance. This created repeated, time-consuming work on the part of the zone manager and his assistant in checking and proofreading all of plaintiff's work. She was advised that the situation had become intolerable and that her mistakes would be documented in the future. She was regularly evaluated (22 times in all) and counseled by her zone manager and his assistant, who gave her written recommendations for additional training and improvement. She declined to enroll in training classes. On November 3, 1978, her performance dropped to a level 4 (needs slight improvement). Following its internal guidelines for dealing with problem performers, defendant prepared performance improvement plans for plaintiff in May 1979 and again in September 1980, at which time Stratton was placed on probation for 90 days.

On November 21, 1980, Stratton was advised that she had until December 23, 1980, to increase her job performance to a level 3 (good, competent performance), or she would be dropped to level 5 (needs much improvement) and be replaced. She complained at various times that her workload was excessive, that her eyes bothered her, and that her psychiatrist attributed her mistakes to excessive job pressure. In December 1980, her probation was extended, but the problems with her work continued, and on February 5, 1981, her last evaluation dropped down to level 5. Finally, on February 13, 1981, plaintiff's employment was terminated. Plaintiff claims that her superiors acted in bad faith in increasing her job responsibilities while she was on probation, that she was given no additional training, and that the repeated evaluations and recommendations concerning her job performance constituted harassment.

It is well established in Nebraska that when employment is not for a definite term, and there are no contractual or statutory restrictions upon the right of discharge, generally, an employer may lawfully discharge an employee whenever and for whatever cause it chooses without incurring liability. *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987); *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980). Here, plaintiff does not contend that

the initial employment was for a definite term or that there are statutory restrictions upon the right of discharge, but she seeks to avoid the consequences of the general rule regarding employment at will by claiming that certain provisions of the employee handbooks and the policies of defendant for handling problem employees modified her employment contract so as to give her additional rights, which her employer violated, citing principally *Morris v. Lutheran Medical Center*, 215 Neb. 677, 340 N.W.2d 388 (1983).

In *Morris*, this court concluded that the fact that an employment contract was for an indefinite duration did not preclude job security provisions of the employer's "Policy and Procedures" handbook from becoming part of the employment contract. The court there cited *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983), as authority for the proposition that there is no reason why the at-will presumption needs to be construed as a limit on the parties' freedom to contract.

In *Jeffers v. Bishop Clarkson Memorial Hosp.*, 222 Neb. 829, 387 N.W.2d 692 (1986), this court held that simply because the employee does not have an employment contract for a specific term does not deprive her of the benefit of grievance procedures as set forth in an employee handbook.

In *Johnston, supra*, the court expanded on the rules regarding modification of an employment contract by virtue of an employee handbook by holding that the language of an employee handbook must constitute an offer definite in form which is communicated to the employee, and which offer is accepted and consideration furnished for its enforceability, before a handbook provision becomes part of the employment contract. The court held that in such a case there was no requirement that the handbook be furnished to the employee at the time of hiring, because the employee's retention of employment with knowledge of new or changed conditions of employment could furnish the necessary consideration.

This court has further ruled that oral representations may, standing alone, constitute a promise sufficient to create contractual terms which could modify the at-will status of an employee. *Hebard v. AT&T*, 228 Neb. 15, 421 N.W.2d 10

(1988).

The plaintiff's contention insofar as it pertains to the defendant's personnel policies can be easily disposed of. It is based upon a bulletin, issued June 26, 1980, by the Chevrolet Motor Division central office to its regional and zone managers, entitled "Salaried Personnel Administration: Managing the Problem Performer." The bulletin consisted of 21 pages of recommendations and guidelines as to how to enable managers of salaried employees to deal effectively with problem employees. The steps to be followed by management were enumerated as follows: (1) identification of the performance problem; (2) communication with both the employee and management; (3) development of the plan of action to improve performance; (4) maintenance of active followup by the supervisor; and (5) determination of the final resolution, based on the results of the action taken.

It is clear that the bulletin relied upon by plaintiff was merely a series of suggested guidelines for management to follow in dealing with employees such as plaintiff. There is no evidence that Stratton knew of or was made aware of the bulletin in question during her employment, and it follows that the bulletin did not constitute an offer definite in form which was communicated to and accepted by the employee. The bulletin clearly did not constitute a rule, procedure, or policy binding upon the employer in the manner referred to in *Morris* or *Jeffers*. Nevertheless, the evidence is overwhelming that defendant did follow the guidelines in dealing with plaintiff, including that provision for final resolution which said:

> In those cases where the necessary level of performance, after a reasonable period of time, does not reach a level of "Good Competent" or better, the following alternatives should be considered:
>
> Probationary reassignment to another salaried position — this is appropriate only when the employe has had a prior record of thoroughly successful performance on other previous jobs.
>
> Termination of Employment: Management is the sole judge of the appropriate separation classification . . . .

The evidence established that probationary reassignment to

another salaried position was not a possible alternative because there was no such position available in the Omaha office, and, further, was not appropriate under that guideline because plaintiff's prior record of employment had been far from "thoroughly successful." The record presents an overall picture of a previously competent worker who, because of her inability or unwillingness to adapt to changing conditions of employment, became incompetent in her work and then sought to place the blame for that situation on her employer. The long and burdensome efforts of her employer to help plaintiff meet minimum standards of job performance are apparent in the evidence, and there is no evidence of discrimination for any reason other than incompetence.

Another publication upon which plaintiff relies is a booklet entitled "Working with General Motors," which highlights GM's most significant personnel policies and procedures. It is qualified by the following statement in the closing: "While the policies and procedures in the booklet do not constitute a legal contract, and do not modify the month-to-month employment relationship described on page 4, GM does believe they represent a good basis for a productive relationship between you and GM." Plaintiff also relies upon a handbook entitled "Your GM Benefits: A Handbook for Salaried Employes in the United States," which was furnished to plaintiff after its publication in 1977. The foreword specifically provides: "This booklet presents general information only and is designed to give you a broad picture of some of the added values of working with General Motors. Any reference to the payment of benefits is conditioned upon your eligibility to receive them." It is significant to note that in *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983), the Minnesota court stated: "Language in the handbook itself may reserve discretion to the employer in certain matters or reserve the right to amend or modify the handbook provisions."

Plaintiff does not claim that any oral representations were made in connection with the handbooks. She instead claims that they guarantee her equal employment opportunity, protection from unilateral disciplinary action, and annual fair appraisals based on the key elements of her job and

performance standards. There is no evidence, other than plaintiff's own conclusionary statements, that plaintiff was denied the benefit of any of the foregoing "guarantees," but, as in *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 314, 299 N.W.2d 147, 151 (1980), "none of the company books or documents provided plaintiff promised any definite term of employment, but only pointed out fringe benefits to the employee *if* he remained employed . . . ." Here, there is no "offer definite in form" which could be the basis for acceptance, consideration, and modification of the contract of employment.

Plaintiff makes the further claim that she was denied fair dealing and good faith in her job termination. The trial court determined otherwise, and properly so. Additionally, except in cases where an employee is deprived of constitutional or statutory rights or where contractual agreements guarantee that employees may not be fired without just cause, there is no implied covenant of good faith or fair dealing in employment termination. *Jeffers v. Bishop Clarkson Memorial Hospital*, 222 Neb. 829, 387 N.W.2d 692 (1986).

The evidence supports the finding that Stratton was an employee at will of Chevrolet. Her employment contract was not modified by publications furnished by her employer. She received regular evaluations. She began in 1978 to be rated below an acceptable level of performance, was eventually placed on probation, failed to improve, and was terminated. The termination was not a violation of her at-will employment.

The district court was correct in finding generally for the defendant and dismissing plaintiff's petition.

AFFIRMED.