KARL HILLIE, APPELLANT, V. MUTUAL OF OMAHA INSURANCE
COMPANY, A CORPORATION, APPELLEE.
512 N.W.2d 358

Filed February 25, 1994.   No. S-92-236.

E. Terry Sibbernsen, P.C., for appellant.

Robert L. Lepp and Robert J. Kmiecik, of McGill, Gotsdiner, Workman & Lepp, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, and FAHRNBRUCH, JJ., and GRANT, J., Retired.

FAHRNBRUCH, J.

Karl Hillie appeals a summary judgment entered in favor of Mutual of Omaha Insurance Company (Mutual) on Hillie's breach of employment contract claim. Basically, Hillie claims that material issues of fact exist as to whether Mutual could terminate his employment for any or no reason.

We affirm the summary judgment entered by the district court for Douglas County.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *VonSeggern v. Willman*, 244 Neb. 565, 508 N.W.2d 261 (1993).

## FACTS

The record discloses the following uncontroverted facts:

In late 1989, Hillie, then a student at Winston-Salem State University in North Carolina, interviewed for a job as a programmer analyst at Mutual. He was interviewed first at his university and later in Omaha. During his interview in Omaha, Hillie filled out and signed an application for employment which stated, "I UNDERSTAND THAT IF I BECOME EMPLOYED, THIS EMPLOYMENT APPLICATION AND ANY OTHER COMPANY PERSONNEL MANUALS AND POLICY STATEMENTS ARE NOT CONTRACTS OF EMPLOYMENT AND THAT I MAY TERMINATE THE EMPLOYMENT WITH OR WITHOUT CAUSE AT ANY TIME AS MAY THE COMPANY."

In mid-December 1989, Mutual offered and Hillie accepted the job for which he applied. Mutual then sent Hillie a letter dated December 19, stating his salary and other details of his employment. The letter made no reference as to the duration of his employment.

Hillie began work January 2, 1990. Sometime during his first 2 weeks of employment, Hillie was given a copy of Mutual's employee handbook, "The Inside Story," along with various other company materials and documents. Hillie was to begin a 6-week training program January 15. However, on January 8 or 9 Hillie hit his head against a bookshelf in his work cubicle. In his deposition, Hillie testified that several days later, he began experiencing pain in his right eye, and that eventually he was diagnosed as having a detached retina. He underwent surgery January 15 and was dismissed from the hospital the next day.

On January 19, Hillie returned to work and began his training program. To help Hillie catch up with his class, Mutual had videotaped the two or three training sessions Hillie missed. On January 24, Hillie discovered he had an infection in his eye. He underwent a second surgery and, after a 10-day hospitalization, was dismissed from the hospital.

Hillie obtained a note from his doctor, which stated that he could return to work February 5. The note contained no restrictions on Hillie's ability to work. Hillie returned to work on February 5, but was unable to work full days.

After his second hospitalization, Mutual did not provide Hillie videotapes of the training sessions he missed. However, Mutual did extend by 3 weeks the deadline for Hillie to complete his training program. The company also offered Hillie the choice of continuing the program with his training class or receiving one-on-one tutoring. Hillie chose to continue with the class.

On or about February 13, Hillie met with Mutual personnel department officials to request additional help and discuss his employment situation. Mutual's development center manager told Hillie that he would have to either work full time or terminate his employment. Hillie testified in his deposition that he left early that day to consider his options and called Mutual later to say he would try to work full time.

Hillie returned to work February 14. He testified he went home for lunch that day, expecting to return, but because of pain in his eye, he stayed home. He did not call anyone at Mutual to advise the company of his decision not to return to work that afternoon. On February 15, Hillie called Mutual to say he had a doctor's appointment, but was informed that his employment had been terminated the previous day.

Hillie filed this action against Mutual, claiming that Mutual breached its employment contract with him by terminating his employment without good and sufficient cause and seeking $115,000 in damages. Mutual filed a motion for summary judgment. After a hearing on the motion, the district court granted summary judgment in favor of Mutual, and Hillie appeals.

## ASSIGNMENTS OF ERROR

Hillie claims that the district court erred in granting summary judgment in favor of Mutual because there are material issues of fact as to (1) whether a unilateral contract of employment existed between the parties and (2) whether Mutual could discharge Hillie without following its internal policies and procedures.

Hillie also assigned as error that Mutual's discharge of Hillie violated public policy. During oral argument before this court, Hillie's attorney abandoned that claim, and we therefore do not consider it.

## ANALYSIS

Unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason. See, *Blair v. Physicians Mut. Ins. Co.*, 242 Neb. 652, 496 N.W.2d 483 (1993); *Goodlett v. Blue Cross*, 234 Neb. 5, 449 N.W.2d 9 (1989); *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987). An employee's at-will status can be modified by contractual terms that may be created by employee handbooks and oral representations. *Hebard v. AT&T*, 228 Neb. 15, 421 N.W.2d 10 (1988). See *Johnston, supra*.

Hillie does not dispute that his employment initially was indefinite and at will. He argues that his at-will status was modified and that Mutual's right to discharge him without cause was restricted by (1) policies and procedures set forth in Mutual's Personnel Manual (manual) and "The Inside Story" (employee handbook), which, Hillie claims, constituted a unilateral contract; and (2) oral assurances from Mutual representatives.

### UNILATERAL CONTRACT

In his brief, Hillie cites two policies as being applicable to his case: a disciplinary action policy and an "absence due to illness" policy.

The disciplinary action policy appears in the manual, which is used by Mutual's managers and supervisors. The manual recommends a four-step disciplinary procedure consisting of (1) a verbal warning, (2) a written warning, (3) probation, and (4) involuntary termination. The employee handbook given to Mutual employees merely states that Mutual has a formal disciplinary action policy but does not describe it.

The absence due to illness policy cited by Hillie appears in the manual and states that if an absence is "authorized for a physical or mental disability, then reasonable accommodations must be considered in determining whether the employee can perform the original duties of the position." It also lists options that should be considered if an employee cannot return to his original position. The employee handbook advises employees

what they should do in case of illness and describes Mutual's "absence with pay" benefits. It does not refer to any company policy regarding employees who are absent due to illness for extended periods of time.

We have previously held that when an employment contract is for an indefinite duration, such indefiniteness by itself does not preclude job security provisions in an employee handbook from becoming part of the employment contract. See, *Goodlett, supra*; *Stratton v. Chevrolet Motor Div.*, 229 Neb. 771, 428 N.W.2d 910 (1988); *Johnston, supra*; *Morris v. Lutheran Medical Center*, 215 Neb. 677, 340 N.W.2d 388 (1983). To become part of the employment contract, the language of an employee handbook must meet the requirements for formation of a unilateral contract. See, *Overmier v. Parks*, 242 Neb. 458, 495 N.W.2d 620 (1993); *Johnston, supra*. In other words, the language must constitute *an offer definite in form which is communicated to the employee*, and the offer must be accepted and consideration furnished for its enforceability. *Overmier, supra*; *Stratton, supra*; *Johnston, supra*.

In an action for breach of a contract of employment, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract. *Overmier, supra*.

In this case, Hillie has failed to adduce any evidence that the language in either Mutual's manual or employee handbook became part of his employment contract with Mutual. Both the manual and the employee handbook state that the terms and policies therein create no contractual obligations between Mutual and its employees. The employee handbook further reserves to Mutual the right "to make final decisions concerning the interpretation and application of the policies and programs, and to change or discontinue them at any time." Similarly, the manual does not establish a mandatory procedure to be applied in every disciplinary case. The manual states that its managers "are not required to go through the entire four steps . . . but may begin at any step appropriate to the seriousness of the employee problem."

We have previously recognized that the language in an employee handbook may reserve discretion to the employer in

certain matters or reserve the right to amend or modify the handbook provisions. See *Stratton, supra*. Both the manual and the employee handbook unequivocally reserve to Mutual and its managers discretion in applying the company's policies and procedures. The language in Mutual's manual and handbook does not constitute a definite offer and could not have become part of Hillie's employment contract.

Moreover, Hillie does not even claim that he ever received a copy of the manual. The manual is given to managers and supervisors, but not to other employees such as Hillie. Only the employee handbook was received by Hillie. That merely stated that Mutual has a disciplinary action policy but did not describe it. There was no evidence that provisions in the manual were ever communicated to him. Therefore, no genuine issue of fact exists as to whether the manual or employee handbook provisions cited by Hillie met the requirements of a unilateral contract.

### Oral Representations

As to Hillie's arguments regarding oral representations, we have ruled that oral representations may, standing alone, constitute a promise sufficient to create contractual terms which could modify the at-will status of an employee. See *Hebard v. AT&T*, 228 Neb. 15, 421 N.W.2d 10 (1988). In this case, Hillie testified in his deposition that he *expected* his job at Mutual to last as long as he wanted or until he "messed up." He stated that he *assumed* he could and would work at Mutual for at least 3 years. However, he conceded that no one from Mutual ever told him this. An employee's subjective understanding of "job security" is insufficient to establish an implied contract of employment to that effect. *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987). Cf. *Cimino v. W. A. Piel, Inc.*, 227 Neb. 196, 416 N.W.2d 505 (1987) (finding that an employee's subjective understanding that he had a right to an accrued salary account was insufficient to establish his entitlement to that account). Hillie failed to produce any evidence, other than his own subjective assumptions, to support his claim that Mutual officials made any oral representations or assurances regarding the duration of his

226

employment or the circumstances under which his employment could be terminated.

## CONCLUSION

The parties are in agreement that Hillie was hired by Mutual as an at-will employee. Hillie claims that his at-will employment ripened into a unilateral employment contract through Mutual's manual and employee handbook and/or through oral representations by Mutual's personnel. The evidence is uncontroverted that neither the manual nor the employee handbook created any contractual obligation between Mutual and its employees. Hillie failed to produce any evidence, other than his own subjective assumptions, to support his claim that Mutual officials made any oral representations or assurance regarding the duration of his employment or the circumstances under which his employment could be terminated. As a matter of law, an employee's subjective understanding of "job security" is insufficient to establish an implied contract of employment to that effect.

There being no genuine issue of any material fact, the district court properly entered a summary judgment in favor of Mutual.

AFFIRMED.

WHITE and LANPHIER, JJ., not participating.