ANTHONY J. SINDELAR, APPELLEE AND CROSS-APPELLANT, V. CANADA TRANSPORT, INC., A NEBRASKA CORPORATION, AND CENTRAL TRANSPORTATION COMPANY, INC., A NEBRASKA CORPORATION, APPELLANTS AND CROSS-APPELLEES.

520 N.W.2d 203

Filed August 5, 1994.   No. S-92-737.

Patrick J. Barrett, of McGrath, North, Mullin & Kratz, P.C., and James F. Brogan for appellants.

T. Randall Wright and Jill R. Griffee Ross, of Dixon & Dixon, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

BOSLAUGH, J.

The appellee and cross-appellant, Anthony J. Sindelar, filed suit against the appellants and cross-appellees, Canada Transport, Inc., and Central Transportation Company, Inc. (the companies), to recover the cash value of a life insurance policy. Sindelar alleged that the cash value of the policy, which was purchased by the companies on Sindelar's life, was to be paid to him at the time he left the employment of the companies. The district court for Madison County entered judgment on a jury verdict for Sindelar in the amount of $111,745. Both parties appeal.

Sindelar began working with the companies in

approximately 1970. He advanced to the position of president and general manager, and in 1979, the companies purchased a split-dollar life insurance policy on his life. The policy provided that upon Sindelar's death, the companies and Sindelar's appointed beneficiary would split the death benefits. The parties alleged different facts regarding the purchase of the policy and the meetings that were held in conjunction with the purchase.

Sindelar alleged that the parties had agreed that if the death benefit was not claimed, the cash value of the policy would be paid to him when his term of employment ended. Sindelar claimed to have been informed of the terms of the payment plan during a meeting in 1979. Sindelar claimed that the people at the meeting—Paul Abler, the owner of the companies; Jim Bradford, the insurance agent; and Sindelar—discussed retirement benefits and deferred compensation plans. Sindelar also claimed that he was later given a folder of materials explaining the benefits of the policy. The companies alleged that the cash value of the policy was never meant to go to Sindelar and that the insurance materials were never officially distributed to him.

Sindelar offered the companies' annual financial reports from 1982 through 1986 as proof of the companies' intent to provide him with a retirement benefit. Those reports each included a paragraph which stated that the companies and Sindelar had entered into a deferred compensation agreement which would grant Sindelar the cash value of the policy when his employment terminated. The companies claimed that those statements were printed in error. The companies explained that Abler and Bradford had discussed the possibility of using the insurance policy as a deferred compensation plan and that Bradford had sent Abler a draft of such a plan. The companies claimed, however, that the draft, which was never signed, was forwarded to the companies' accountants for review and was mistakenly added to the financial statements.

The parties also recount different stories regarding loans taken against the policy. Sindelar claims that when the companies borrowed money against the policy, Abler assured him that the money would be repaid. Abler, testifying for the

companies, stated that he told Sindelar only that the death benefit would not change as a result of the loan.

Sindelar's employment with the companies ended in December 1989. The companies surrendered the policy in May 1990 and collected the cash value of the policy less the value of the previous loans. This action was commenced in September of the same year.

Sindelar brought three causes of action, under the theories of (1) breach of an oral and written contract, (2) promissory estoppel, and (3) violation of the Nebraska Wage Payment and Collection Act. The trial judge dismissed the second cause of action as duplicative of the first cause of action and the third as inapplicable because the payment did not constitute the payment of wages under the act. In response to a motion by the companies, the trial judge found that the first cause of action was not preempted by the federal Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1001 through 1461 (1988)). After a trial, a jury rendered a verdict for Sindelar in the amount of $111,745, which was entered by the trial court.

The companies allege as error, in summary, the failure of the trial court (1) to dismiss the case as preempted by ERISA, (2) to deny Sindelar's motion in limine regarding the terms of the unsigned deferred compensation agreement, (3) to give proper jury instructions regarding contract law, and (4) to give proper jury instructions regarding damages.

Sindelar cross-appeals the trial court's finding that the payment of the cash value of the policy was not the payment of wages under the Nebraska Wage Payment and Collection Act.

We will address the ERISA question first as a jurisdictional matter. ERISA applies to an " 'employee benefit plan,' " which includes an "employee welfare benefit plan." § 1002(3). An "[e]mployee welfare benefit plan," as defined by ERISA, includes "any plan, fund, or program . . . established or maintained . . . for the purpose of providing [various specified benefits] for its participants . . . through the purchase of insurance or otherwise." § 1002(1). Severance benefits are included in those specified benefits. *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254 (8th Cir. 1994).

The existence of an ERISA plan is a mixed question of fact

and law, and is reviewed de novo. *Id*. In *Kulinski*, 21 F.3d at 256-57, the U.S. Court of Appeals for the Eighth Circuit defined the limits of the scope of ERISA as follows:

> An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan. [Citation omitted.] Instead, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), and its progeny have delineated the standard to be applied to determine whether a benefits plan falls within ERISA's ambit: The pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.

The court in *Kulinski* cited the decisions of other circuits which stated that one-time lump-sum severance payment plans were not governed by ERISA. See, *Fontenot v. NL Industries, Inc.*, 953 F.2d 960 (5th Cir. 1992); *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992). The *Kulinski* court determined that a " 'golden parachute' " agreement did not constitute an ERISA plan because the terms of the agreement did not require the establishment of an ongoing administrative scheme. 21 F.3d at 254. The court stated that once the benefit had been triggered, "there was nothing for the company to decide, no discretion for it to exercise, and nothing for it to do but write a check." 21 F.3d at 258.

Whether the cash value payment in this case is a severance payment or a deferred compensation agreement, we will apply the standard expressed in *Kulinski*. Applying that standard to the facts of this case, we find that ERISA does not govern the plan or preempt the cause of action. According to Sindelar, the agreement provided that he would receive the cash value of the insurance policy at the end of his term of employment. No administrative scheme was necessary for the benefit to be paid;

the companies needed only to write a check. The trial court properly exercised jurisdiction over this matter.

The companies also allege that the trial court erred in granting Sindelar's motion in limine to exclude from evidence the terms of the unsigned deferred compensation agreement. The document was referred to by Sindelar for the purpose of showing that a deferred compensation agreement had been discussed. The admissibility of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334 (1992).

The agreement contained language which would have limited Sindelar's ability to work for competing businesses. The companies contend that they would not have entered into a deferred compensation arrangement without a noncompetition clause and that the terms of the agreement would support that argument. The companies also claim that the introduction of the terms of the agreement would tend to mitigate the mention of the deferred compensation in the financial reports.

Sindelar claims that the introduction of the terms would be confusing because the agreement was never entered into. Sindelar also claims that the introduction of evidence that Sindelar started working for a competitor, which would have been in violation of the terms of the agreement, would serve to prejudice him. Sindelar notes that a counterclaim by the companies, alleging that Sindelar had breached an employee's duty of loyalty, good faith, and fair dealing, had been dismissed on summary judgment. Sindelar claims that the summary judgment precluded the introduction of evidence of his later employment.

The trial court stated that evidence about Sindelar's postemployment activities was irrelevant. The trial court also held that the terms of the unsigned agreement were irrelevant. The court was not abusing its discretion in so holding. Neither party claimed that the agreement was entered into. Neither party claimed that the alleged oral agreement was based on the unsigned agreement. The terms of the unsigned document were irrelevant to the case. The companies' assignment of error is

without merit.

The companies' remaining assignments of error pertain to the instructions given by the trial court. The companies claim that the trial court erred in giving certain instructions and in refusing to give other instructions. To establish reversible error from a court's refusal to give a requested instruction, an appellant is under a threefold burden to show that the court's refusal was prejudicial, that the tendered instruction is a correct statement of law, and that the instruction is applicable to the evidence in the case. *McClymont v. Morgan*, 238 Neb. 390, 470 N.W.2d 768 (1991). The appellant is required to include in the transcript "any tendered instruction refused, if the appellant intends to assign error to such refusal." Neb. Ct. R. of Prac. 4A(2) (rev. 1988). The instructions which the companies claim to have tendered appear nowhere in the transcript or the bill of exceptions, but only in the brief. A brief may not be used to expand the record. *Scott v. Hall*, 241 Neb. 420, 488 N.W.2d 549 (1992); *Obermeier v. Bennett*, 230 Neb. 184, 430 N.W.2d 524 (1988). Therefore, we will consider only whether the instructions given were wrong.

All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Behm v. Northwestern Bell Tel. Co., supra.* In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Pugh v. Great Plains Ins. Co.*, 239 Neb. 171, 474 N.W.2d 677 (1991).

The companies claim that Sindelar's testimony failed to set forth the required elements of a contract. The companies also claim that the instructions failed to impress upon the jury the rule that the terms of a contract must be definite. The trial court offered two instructions, Nos. 6 and 7, which addressed the measure of specificity necessary for the creation of a contract. Instruction No. 6 stated, in part:

Before the plaintiff can recover against defendants, the plaintiff must prove, by the greater weight of the evidence,

each and all of the following:

1. That the plaintiff and defendants entered into the contract;

2. The terms of the contract;

3. That the defendants breached the contract as claimed by the plaintiff;

4. That this breach of contract was the proximate cause of some damage to the plaintiff; and

5. The nature and extent of that damage.

Instruction No. 7 stated:

For there to be a contract, the parties must agree to do or not to do something, which requires an offer and acceptance.

An "offer" is an expression of willingness to enter into an agreement with another, made in such a way that the other party is justified in believing that his acceptance is invited and will result in a contract.

"Acceptance" of an offer is an expression of agreement to the terms of the offer, made while the offer is still open.

The agreement may be written, oral, inferred from conduct, or found in some combination of those ways.

These instructions give sufficient detail concerning the law of contracts. They correctly outline the elements of an offer and of a contract and apply to the evidence in the case. The companies were not prejudiced, nor was a substantial right adversely affected by the instructions. The companies' assignment of error on this point must fail.

The other instruction which the companies assign as error pertains to the measure of damages allowed in the case. The trial court gave the following as instruction No. 11:

If you find in favor of the plaintiff on his claim of breach of contract, then you must determine the amount of plaintiff's damages.

In this case, the proper measure of damages is the total cash value, including dividends, of the life insurance policy without regard to policy loans at the time plaintiff's employment terminated with the defendants.

The companies claim that the instruction essentially directed a verdict on the issue of damages and failed to allow the jury to

make a credibility determination regarding conflicting testimony given by Abler and Sindelar. Abler stated that he had told Sindelar that the loans against the policy would come out of the companies' share of the death benefits. Sindelar claimed that Abler had told him that the loans would be paid back to the policy.

The companies claim that the conflicting testimony created a question of fact regarding the measure of damages. The inconsistency in the testimony, however, raises a question regarding the existence of a contract, not the measure of damages. Abler's testimony cannot be construed as a statement that the cash value payment would somehow be impaired by the loans. The only testimony regarding the terms of the contract as related to the cash value payment was given by Sindelar. Sindelar claimed that the agreement guaranteed him the full value of the policy upon leaving the company. The paragraph contained in each of the financial reports described the same arrangement. The instruction correctly stated the law, that if the jury found that a contract existed, the full value of the policy was the correct measure of damages.

Finally, we must address Sindelar's cross-appeal. He claims that the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 through 48-1232 (Reissue 1988, Cum. Supp. 1990, & Cum. Supp. 1992), governs this action. The determination of the applicability of a statute is a question of law, and when considering a question of law, the appellate court makes a determination independent of the trial court. *Berumen v. Casady*, 245 Neb. 936, 515 N.W.2d 816 (1994); *Speidell Monuments v. Wyuka Cemetery*, 242 Neb. 134, 493 N.W.2d 336 (1992).

A question exists whether the payment falls under the statutory definition of "wages." The Nebraska Wage Payment and Collection Act defines wages as "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." § 48-1229(3) (Cum. Supp. 1990).

Deferred compensation is presently earned but is to be paid

to an employee in the future if he possesses the qualifications required by the plan and he complies with the conditions prescribed by it. See *Wilson v. Marsh*, 162 Neb. 237, 75 N.W.2d 723 (1956). We think the record shows that the cash value of the insurance policy was deferred compensation to be paid to Sindelar by the companies upon the termination of his employment with them. It amounted to a fringe benefit, as it was in the form of a pension.

The insurance policy's cash value was, in effect, wages not payable until Sindelar's employment was terminated. Thus, Sindelar is entitled to an attorney fee of not less than 25 percent of the unpaid wages for his suit in the district court and not less than 25 percent of the unpaid wages for his case in this court, as provided in § 48-1231 (Cum. Supp. 1992). The judgment is modified to award an additional $27,936.25 to Sindelar for attorney fees in the trial court and an additional $27,936.25 for attorney fees in this court.

As so modified, the judgment is affirmed.

AFFIRMED AS MODIFIED.