CARL R. WALPUS, APPELLANT, V. MILWAUKEE ELECTRIC TOOL CORPORATION, APPELLEE.

532 N.W.2d 316

Filed June 2, 1995.   No. S-93-753.

Thomas J. Young, of Young & LaPuzza, for appellant.

Robert F. Rossiter, Jr., and Lori L. Fuhrman, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

Carl R. Walpus appeals the decision of the Douglas County District Court sustaining the summary judgment motion filed by Walpus' former employer, Milwaukee Electric Tool Corporation (METCO), in Walpus' wrongful termination action. Walpus also

assigns as error the district court's decision finding certain evidence irrelevant and therefore inadmissible. For the reasons cited below, we affirm.

## I. FACTUAL BACKGROUND

### 1. EVENTS LEADING TO TERMINATION

METCO is a Wisconsin–based company which manufactures and sells portable electric tools on a worldwide basis. Walpus began working for METCO as a district manager in May 1974. Walpus' duties primarily involved selling METCO's products to purchasers in Nebraska and Iowa. Walpus is credited with developing and maintaining METCO's clientele in his region and was considered by his immediate supervisor, Jim Jenkins, to be one of the top salespersons in that region.

Walpus' employment with METCO became tenuous on January 5, 1990, when his biggest client, Kel–Welco, banned him from its property. The president of Kel–Welco, Phil Welch, banned Walpus after hearing that Walpus had discussed Kel–Welco's credit situation with representatives from Thacker Electric, a METCO client and a competitor of Kel–Welco's. Richard Randlett, the vice president of marketing for METCO, testified that Kel–Welco's decision to ban Walpus from its property would have had a negative impact on METCO's ability to do business with Kel–Welco over time. However, the record reflects that from the time Kel–Welco banned Walpus until the date of Walpus' termination, Kel–Welco continued to make regular purchases from METCO.

When Jenkins learned of the Kel–Welco situation, he telephoned Walpus and informed him that he had until February 16 to resolve his problems with Kel–Welco. A memorandum from Jenkins to Walpus dated January 13, 1990, confirmed the telephone conversation and clearly indicated that if Walpus did not resolve the Kel–Welco situation by the February 16 deadline, Walpus' employment with METCO would be terminated.

Walpus wrote a letter to Jenkins denying any wrongdoing and expressing his disappointment with the way METCO handled the Kel–Welco situation. Walpus also made numerous attempts to discuss the Kel–Welco situation with Welch after he received

the memorandum from Jenkins. However, when the February 16 deadline arrived, Walpus was still banned from Kel–Welco property. For that reason, on February 16, Jenkins informed Walpus that his employment with METCO had been terminated.

### 2. Factual Support for Employment Contract

In his petition, Walpus alleged that certain oral and written representations made by METCO management contractually restricted METCO's ability to terminate Walpus without cause. We will review the alleged representations in chronological order.

The first representation cited by Walpus occurred during his first job interview with METCO. Walpus claimed that during that first interview, Jenkins told him that he could only be terminated if he stole from the company or if he did not do his job. According to Walpus, Jenkins repeated the same limited grounds for termination during his third job interview with METCO.

Walpus next contends that he received a written "sales manual" on his first day of work. METCO distributed the sales manual, a booklet which outlined various terms and conditions of employment, to all its district managers. The sales manual contained the following language regarding termination of employment:

### TERMINATION OF EMPLOYMENT

District Managers may be discharged by the Company for any of the following reasons:

1. Falsification of forms or reports. These would include employment form, expense sheet, route sheet, call reports, etc.

2. Failure to develop the sales territory after a reasonable length of time. This would be documented by a number of letters and warnings from supervisors.

3. Conduct unbecoming an employee of the Company. This could range from being convicted of a felony to drinking on the job to cashing worthless checks with customers.

4. Personally buying or selling Company merchandise, accepting distributor kickbacks, or charging for repairs or

replacement parts furnished from the service kit.

5. Insubordination, wherein a salesman fails to discharge his normal responsibilities or is habitually uncooperative with supervisors or Company department heads.

6. Excessive or unexplained absenteeism.

If it becomes necessary to terminate a District Manager, he will be given two weeks salary as severance pay. His final salary and commission checks will be held up until all the demonstration equipment, automobile, manuals and displays have been accounted for and checked in at either the Factory or Branch.

Walpus claimed that this language in the sales manual expressly limited METCO's ability to discharge employees to those instances listed therein.

Additionally, Walpus claimed that during group meetings held two to three times a year, Jenkins discussed the issue of termination for cause with the district managers. In his affidavit, Walpus testified that "[a]t a great many of these meetings Mr. Jenkins repeatedly informed all of the sales representatives, including myself, that the provisions of the Sales Manual were binding upon both the District Managers and [METCO], inclusive of the provisions with regard to termination of District Managers." That statement from Walpus' affidavit is the most detailed explanation of the alleged statements attributed to Jenkins at the group meetings.

Walpus also cited the deposition testimony of Jenkins and Randlett as evidence supporting his contention that METCO contractually limited its ability to terminate Walpus without cause. Jenkins and Randlett each testified that they believed they needed cause to terminate Walpus.

### 3. Procedural History

Walpus filed the instant lawsuit against METCO for wrongful termination. METCO filed a motion for summary judgment, which the district court granted.

## II. ASSIGNMENTS OF ERROR

Walpus contends that the district court erred in (1) sustaining METCO's relevancy objections to portions of Walpus' evidence

and (2) granting METCO's motion for summary judgment.

## III. STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995); *Terry v. Duff*, 246 Neb. 524, 519 N.W.2d 550 (1994); *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994). The admissibility of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Kroeger v. Ford Motor Co.*, *supra*; *Sindelar v. Canada Transport, Inc.*, 246 Neb. 559, 520 N.W.2d 203 (1994); *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995); *Gravel v. Schmidt*, 247 Neb. 404, 527 N.W.2d 199 (1995); *Heath Consultants v. Precision Instruments*, 247 Neb. 267, 527 N.W.2d 596 (1995). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Jim's, Inc. v. Willman, supra*; *Gravel v. Schmidt, supra*; *Huntwork v. Voss*, 247 Neb. 184, 525 N.W.2d 632 (1995).

## IV. ANALYSIS

### 1. Excluded Evidence

At the hearing on the motion for summary judgment, METCO objected on relevancy grounds to a number of exhibits offered by Walpus. In particular, METCO objected to the admission of a favorable letter of recommendation written by

Richard Work for Walpus, a METCO company policy outlining procedures for terminating district managers, and notes made during a committee meeting which discussed Walpus' termination.

### (a) Letter of Recommendation

Walpus offered into evidence a letter of recommendation authored by Work, wherein Work stated that the METCO staff held Walpus "in the very highest esteem for his diligence and work ethics." Work wrote that Walpus was exceptionally knowledgeable in his field and that Work would not hesitate to recommend Walpus for any position. Walpus contends that the letter of recommendation was relevant because it damaged Work's credibility as a witness and evidenced an employment contract between Walpus and METCO.

In an action for breach of an employment contract, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract. *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994); *Hillie v. Mutual of Omaha Ins. Co.*, 245 Neb. 219, 512 N.W.2d 358 (1994). The language which forms the basis of the employment contract, whether oral or written, must constitute an offer definite in form which is communicated to the employee, and the offer must be accepted and consideration furnished for its enforceability. *Hillie v. Mutual of Omaha Ins. Co., supra.*

We affirm the district court's decision to exclude the letter of recommendation. The only issue at the summary judgment hearing was whether any oral or written statements modified Walpus' at–will employment status. The letter of recommendation, written after METCO terminated Walpus, could not have affected Walpus' at–will status.

Likewise, the letter of recommendation did not reflect Work's opinion of whether METCO needed cause to terminate Walpus. The letter of recommendation was relevant, if at all, only to show that Work did not think that METCO had good cause to terminate Walpus. If the case at bar were to go to trial, METCO's reasons for terminating Walpus might become relevant. However, in the summary judgment motion in the

instant case, the only issue presented was whether METCO contractually modified Walpus' at–will status. Evidence related to whether METCO had cause to terminate Walpus, like the letter of recommendation, has no bearing on Walpus' at–will status.

### (b) METCO Termination Procedure Policy

Walpus alleges that METCO policy No. A0450, which outlined the company procedure for terminating district managers, was consistent with a requirement for "good cause" termination and therefore relevant. The METCO policy required the approval of certain corporate executive officers before any salaried employee (including district managers) could be terminated. Walpus contends that the procedural policy created an inference that METCO needed cause to terminate those employees.

Walpus' argument is without merit. First, nothing in the record indicates that Walpus knew of the METCO policy during his employment with the company. It follows that the METCO policy did not constitute an offer definite in form which was communicated to and accepted by Walpus. Therefore, the METCO policy could not form the basis for Walpus' alleged employment contract. See *Stratton v. Chevrolet Motor Div.*, 229 Neb. 771, 428 N.W.2d 910 (1988). Second, the termination procedure could only be relevant to the instant proceedings if Walpus alleged that METCO failed to follow its termination procedures when it decided to discharge him. The record clearly indicates that METCO complied with its termination procedure policy in arriving at the decision to terminate Walpus. Thus, the district court correctly excluded the termination procedure policy as irrelevant. See *id.* See, also, *Goodlett v. Blue Cross*, 234 Neb. 5, 449 N.W.2d 9 (1989).

### (c) Committee's Notes

Finally, Walpus argues that the district court erred when it excluded as irrelevant certain notes taken during the committee meeting at which METCO management discussed Walpus' termination. The relevant portion of the evidence reads:

[W]e have grounds for termination as Kel–Welco will not accept [Walpus] as our Sales Rep (persona non grata) and

this happened to be his major account. As such, he becomes ineffective and because of misconduct, we have no alternative other than termination. Mike points out that we have given him an opportunity to resolve this issue and if he cannot, then termination is our only recourse. The customer is always right.

Mike suggests we ascertain what if anything he has done to correct the situation before termination. J. Jenkins plans to do this.

Walpus claims that the notes were relevant because they created an inference that "the committee was aware that the Defendant METCO could not terminate Plaintiff's employment except for cause." Brief for appellant at 18. We hold that the subjective thoughts of the METCO committee, without any objective evidence that those thoughts were communicated to Walpus, were irrelevant to determining whether METCO contractually modified Walpus' at-will status. See *Goodkind v. University of Minnesota*, 417 N.W.2d 636 (Minn. 1988) (whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions). Therefore, the district court properly excluded the committee's notes as irrelevant.

## 2. MOTION FOR SUMMARY JUDGMENT

Walpus contends that the district court erroneously determined Walpus to be an at-will employee and therefore improvidently granted METCO's motion for summary judgment. This court has held on several occasions that unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason. *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994); *Hillie v. Mutual of Omaha Ins. Co.*, 245 Neb. 219, 512 N.W.2d 358 (1994). Walpus claims that METCO contractually prohibited itself from terminating him without cause.

### (a) Alleged Written Contract

First, Walpus contends that pursuant to the "termination of employment" language found in the sales manual, METCO

expressly limited its ability to discharge district managers to situations where good cause for termination existed. Our decision in *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987), is dispositive. In *Johnston*, the employee claimed that provisions in his employee handbook regarding a probationary period and dismissals for cause restricted the company's right to terminate him. This court rejected the employee's claim, stating:

> [T]he language in the handbook is not definite enough to constitute an · offer of a unilateral contract on job termination. The handbook does nothing more than set out six examples of dismissals for cause. Nowhere does the handbook limit the reasons for dismissal to these six provisions or state that there are any restrictions on the employer's right to discharge.

*Id.* at 741, 408 N.W.2d at 267–68.

Nothing in METCO's sales manual limited the company's ability to discharge its employees. Rather, the sales manual simply listed six grounds upon which district managers could be discharged. Walpus' supervisor, Jenkins, testified that the items listed in the sales manual constituted grounds for immediate dismissal, but that the list was not exclusive. Walpus failed to offer any evidence to refute Jenkins' testimony and failed to point to anything in the record that would distinguish the instant case from *Johnston*. We hold as a matter of law that the "termination of employment" language in METCO's sales manual was insufficient to create a factual dispute as to whether METCO contractually limited its ability to discharge district managers without cause. Therefore, the district court correctly sustained METCO's motion for summary judgment as to the written contract claim.

### (b) Alleged Oral Contract

#### (i) Statements Made During Interviews

Walpus claimed that at his first interview with METCO, Jenkins told him that the only reasons he could be terminated were if he stole from the company or did not do his job. Walpus alleged that Jenkins repeated the same limited reasons for termination during Walpus' third interview ·with METCO.

Jenkins denied ever discussing the reasons for which district managers could be discharged during Walpus' initial interviews with METCO, and he testified that he never told Walpus that he could only be discharged for cause. However, Jenkins testified that he "probably" discussed the security of Walpus' position if Walpus did his job well. Additionally, Jenkins testified that he personally believed that he needed cause to terminate Walpus.

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995); *Gravel v. Schmidt*, 247 Neb. 404, 527 N.W.2d 199 (1995); *Huntwork v. Voss*, 247 Neb. 184, 525 N.W.2d 632 (1995). This court has held that oral representations may, standing alone, constitute a promise sufficient to create contractual terms which could modify the at–will status of an employee. *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994); *Hillie v. Mutual of Omaha Ins. Co.*, 245 Neb. 219, 512 N.W.2d 358 (1994). However, when we view the record in a light most favorable to Walpus, his factual allegations regarding the alleged oral representations made by Jenkins cannot support his claim for an employment contract.

Walpus alleged that pursuant to the oral representations made by Jenkins during the hiring process, Walpus could not be terminated unless he stole from the company or did not do his job. However, Walpus admits to receiving the sales manual containing the "termination of employment" language during his first day of work at METCO. It is uncontradicted that Walpus continued to work for METCO after receiving the sales manual. The nonexclusive list of reasons for termination provided in the sales manual is far more expansive than the two reasons for termination cited by Walpus in his oral contract claim.

In *Rowe v Montgomery Ward*, 437 Mich. 627, 632, 473 N.W.2d 268, 269 (1991), the Michigan Supreme Court stated:

> [U]nless the [plaintiff's] theory has some relation to the reality, calling something a contract that is in no sense a contract cannot advance respect for the law. . . . [W]e seek a resolution which is consistent with contract law relative

to the employment setting while minimizing the possibility of abuse by either party to the employment relationship.

The court in *Rowe* faced a situation similar to the case at bar wherein the employee alleged the existence of an oral contract which limited the employer's ability to terminate the employee without cause. The *Rowe* court noted that the employee had signed a "Rules of Personal Conduct" sheet which did not contain any "just cause" language. Instead, the sheet contained a list of misconduct such as theft, destruction of property, and moral impropriety which would result in immediate dismissal. The court held that the employee's agreement to abide by those rules suggested that any subjective belief the employee maintained that she could only be terminated for cause pursuant to the alleged oral contract was not reasonable.

Walpus faces a similar circumstance. He claims that Jenkins told him that he could only be terminated for two reasons: stealing or not doing his job. On his first day of work, Walpus received a sales manual which set forth six examples of misconduct which were grounds for immediate termination. That language in the sales manual undercut any reasonable objective belief that a contract arose from the alleged oral representations attributed to Jenkins. Thus, even assuming that Jenkins made the alleged statements during his interviews with Walpus, those statements were insufficient to support his oral contract claim in light of the entire record. See, *Mooneyham v. Smith Kline & French Labs.*, 55 Fair Empl. Prac. Cas. 1777 (W.D. Mich. 1990); *Rowe v Montgomery Ward, supra.*

### (ii) Statements Made at Company Meetings

Finally, Walpus claims that during group meetings which were held two to three times a year, Jenkins discussed termination for cause with the district managers. However, the record reflects that the alleged oral statements made at the group meetings were insufficient to constitute an oral modification of Walpus' at-will employment status. In his affidavit, Walpus testified that "[a]t a great many of these meetings Mr. Jenkins repeatedly informed all of the sales representatives, including myself, that the provisions of the Sales Manual were binding upon both the District Managers and

[METCO], inclusive of the provisions with regard to termination of District Managers." That statement from Walpus' affidavit is the most detailed explanation of the alleged statements made during the group meetings. We have already held that the provisions of the sales manual did not modify Walpus' at-will status. Thus, even assuming that Walpus' testimony is true and accurate, the oral representations he attributes to Jenkins are insufficient to constitute a contractual modification of his at-will status.

## V. CONCLUSION

The district court properly excluded the letter of recommendation, the METCO termination procedure policy, and the committee's notes because those items were irrelevant. The district court also correctly sustained METCO's motion for summary judgment because when the evidence is viewed in a light most favorable to Walpus, METCO was entitled to judgment as a matter of law.

AFFIRMED.

WRIGHT, J., concurs in the result.

LANPHIER, J., dissenting.

Summary judgment is proper only when the evidence discloses that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts. *Cimino v. FirsTier Bank*, 247 Neb. 797, 530 N.W.2d 606 (1995); *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995). I respectfully dissent. The evidence clearly discloses a genuine issue of fact regarding the existence of an oral or written contract with Walpus which restricted METCO's ability to terminate him as they did. Therefore, the district court erred in granting METCO's motion for summary judgment.

WHITE, C.J., joins in this dissent.